IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | No. 52, 2014 |
| Plaintiff-Below, | § | |
| Appellee/Cross-Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in |
| v. | § | and for Sussex County |
| | § | |
| JEFFREY W. BARNES, | § | C.A. No. S14M-01-002 THG |
| | § | |
| Defendant-Below, | § | |
| Appellant/Cross-Appellee. | § | |

Submitted:  May 20, 2015
Decided:   June 2, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court.  **AFFIRMED**.

Elizabeth R. McFarlan, Esquire, Sean P. Lugg, Esquire (*argued*), Karen V. Sullivan, Esquire, Kathryn J. Garrison, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for the State of Delaware.

Robert H. Robinson, Jr., Esquire, Bernard J. O'Donnell, Esquire (*argued*), Office of Public Defender, Wilmington, Delaware, for Jeffrey W. Barnes.

**STRINE**, Chief Justice:

# I. INTRODUCTION

This appeal involves a single question: whether the provisions of the Truth In Sentencing Act of 1989 (the "TIS Act") that indisputably abolished parole as to Title 11 and Title 16 of the Delaware Code also apply to felony DUI offenses imposed under § 4177 of Title 21. If the answer to that question is yes, as the State now argues, felony DUI offenders are ineligible for parole. But for nearly a generation, the judicial and administrative answer to the question has consistently been no. That is, the Superior Court and the Board of Parole have operated with the understanding that the provisions of the TIS Act that eliminated parole do not apply to felony DUI offenses. In addition, the Delaware Sentencing Accountability Commission ("SENTAC"), which is statutorily charged with providing guidelines to courts and attorneys about sentencing practices in criminal cases, adhered to this position in its 2014 Benchbook. Because the Code can reasonably be interpreted to continue parole eligibility for DUI offenses, that long-standing judicial and administrative interpretation must be given great weight.[1] We thus adhere to principles of *stare decisis* and judicial restraint, and give the Code the reading most consistent with the settled expectations of the public.[2]

---

[1] *See, e.g.*, *Council 81, American Fed'n of State, County and Municipal Employees v. Delaware*, 293 A.2d 567, 571 (Del. 1972) ("In seeking legislative intent, we give due weight to the practices and policies existing at the time [the statute] was enacted . . . . A long-standing, practical, and plausible administrative interpretation of a statute of doubtful meaning will be accepted by this Court as indicative of legislative intent."); *Delaware v. Mayor of Wilmington*, 163 A.2d 258, 264 (Del. 1960) ("[W]here a statute is doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent.").

[2] *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (*stare decisis* is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the

## II. THE TRUTH IN SENTENCING ACT

The General Assembly passed the Truth In Sentencing Act on July 17, 1989, to provide more certainty about the length of sentences to be served by criminal defendants.[3] The TIS Act expressly amended statutes contained in Titles 11 and 16 only, although many of the amended provisions, including those governing the accumulation of good time credits, had previously been applied to offenses contained in other titles by the interaction of the Code's provisions.[4] Most relevant to this appeal, the TIS Act amended 11 *Del. C.* § 4205 to state, "[n]o sentence to Level V incarceration imposed pursuant to this Section is subject to parole."[5] Section 4205 is a backbone provision of Title 11 that sets forth certain minimum and maximum sentences for levels of felonies contained in

---

judicial process"); Lewis F. Powell, Jr., *Stare Decisis and Judicial Restraint*, 47 WASH. & LEE L. REV. 281, 289-90 (1990) ("[I]nevitability of change touches law as it does every aspect of life. But stability and moderation are uniquely important to the law. . . . [R]estraint in decisionmaking and respect for decisions once made are the keys to preservation of an independent judiciary and public respect for the judiciary's role as a guardian of rights.").

[3] *See* 67 Del. Laws, ch. 130 [hereinafter "TIS Act"] § 1 ("The purposes of this Act are: To achieve truth in sentencing by assuring that the public, the State and the Court will know that the sentence imposed by the Court will be served by the defendant; and that, the defendant will know what the actual effect of the sentence will be. . . .").

[4] *See, e.g.*, *State v. Clyne*, 2002 WL 1652149, *2 (Del. Super. July 22, 2002) (in calculating the amount of good time credit earned by the defendant, who was imprisoned for a felony DUI offense under Title 21, the Superior Court reasoned that because the TIS Act did not apply to DUI offenses, it was required to apply "old law," *i.e.*, the good time credit provisions contained in Title 11 before it was amended by the TIS Act. This suggests that these good time credit provisions had previously applied to crimes in Title 21.); *cf. State v. Williams*, 1975 WL 167882, *1 (Del. Super. Aug. 7, 1975) (noting that 11 *Del. C.* § 4201, which at the time stated that, "[a]ny offense defined outside this Criminal Code which is declared to be a felony without specification of the classification thereof shall be deemed a class E felony," accordingly set the punishment for felonies defined without a classification in Title 21).

[5] TIS Act § 6 (amending 11 *Del. C.* § 4205(j)). The TIS Act also added a new Section 4354 to Title 11, which states, "[n]o sentence imposed pursuant to the provisions of the Truth in Sentencing Act of 1989 shall be subject to parole under the provisions of this subchapter." TIS Act § 7 (adding 11 *Del. C.* § 4354).

the Code.[6] The TIS Act also stated that it took effect with respect to "all crimes" committed after June 30, 1989.[7]

When the TIS Act was enacted, DUIs were unclassified misdemeanor offenses contained in § 4177 of Title 21.[8] In 1995, the General Assembly amended § 4177 to create felony DUI offenses. The maximum penalties for felony offenses were increased in 2009, and the minimum penalties for felony DUI offenses were increased in 2012.[9] Accordingly, persons imprisoned for DUI offenses today are serving longer sentences than those who were incarcerated when the TIS Act was enacted.

## III. PROCEDURAL BACKGROUND[10]

The procedural background of this case is complicated. On May 24, 2013, Jeffrey Barnes pled guilty to his fifth DUI offense. The Superior Court sentenced Barnes under

---

[6] *See* 11 *Del. C*. § 4205(b) ("The term of incarceration which the court may impose for a felony is fixed as follows: (1) For a class A felony not less than 15 years up to life imprisonment to be served at Level V except for conviction of first-degree murder in which event § 4209 of this title shall apply. (2) For a class B felony not less than 2 years up to 25 years to be served at Level V. (3) For a class C felony up to 15 years to be served at Level V. (4) For a class D felony up to 8 years to be served at Level V. (5) For a class E felony up to 5 years to be served at Level V. (6) For a class F felony up to 3 years to be served at Level V. (7) For a class G felony up to 2 years to be served at Level V.").

[7] TIS Act § 4 ("The provisions of Title 11 and Title 16, which are repealed by this Act shall remain in force and effect for the purpose of trial and sentencing for *all crimes* which occur prior to 12:01 a.m., June 30, 1990.") (emphasis added).

[8] *See* 21 *Del. C*. § 4177 (1988) (providing penalties for DUI offenses); 21 *Del. C*. §4102 (1963-2009) (providing that all offenses in the Title 21 are misdemeanors unless otherwise designated); 11 *Del. C*. § 4202 (1988) (providing that misdemeanors outside of the Criminal Code without specification were unclassified misdemeanors).

[9] 77 Del. Laws, ch. 162 (amending 21 *Del. C*. § 4177); 77 Del. Laws, ch. 167 (same).

[10] The undisputed facts are drawn from the Superior Court's order and the record presented by the parties on appeal.

21 *Del. C.* § 4177(d) to five years at Level V incarceration for his class E felony.[11] In accordance with what seems to have been standard practice in the Superior Court for DUI offenses, the sentence order designated the offense as "non-TIS."[12]

In August 2013, Barnes filed an application to the Board of Parole for early release. The Board granted Barnes' application over the State's opposition and Barnes was released after serving only six months of his sentence. The State then filed an emergency motion to correct an illegal sentence in the Superior Court, arguing for the first time that Barnes' sentence was erroneously labeled as "non-TIS" because the TIS Act applied to felony DUI convictions, and thus Barnes was ineligible for parole. After the Superior Court refused to rule on the State's motion,[13] the State filed two petitions for a writ of mandamus directing the Board of Parole to rescind its decision releasing Barnes.[14]

---

[11] *State v. Del. Bd. Of Parole*, 2014 WL 595870, *1 (Del. Super. Jan. 24, 2014) [hereinafter "Order"].

[12] *See id.*; *see also Owens v. State*, 2010 WL 8250841 (Del. Super. Dec. 6, 2010); *State v. Clyne*, 2002 WL 1652149 (Del. Super. July 22, 2002). We note that the record indicates that the automated sentencing software that has been used for the Superior Court for many years reflects this long-standing understanding and automatically generates the notation "NON-TIS" for DUI offenses. *See, e.g.*, App. to Op. Br. at 10.

[13] The Superior Court stated in an office conference with the State and Barnes' counsel that it did not think the sentence was illegal because "[the court's] reading of . . . the case law and [its] personal experience on SENTAC . . . [is that] felony DUIs have not been considered TIS sentences. . . . The felony DUIs came into existence six years after the TIS came into effect." App. to Op. Br. at 82.

[14] The first petition was captioned as a criminal case and was directed at Barnes. The second, filed several weeks later, was captioned as a civil action and directed at the Board of Parole.
    The Board of Parole submitted a letter in response to the first writ filed by the State, stating that it did not oppose the State's position: "[T]he Board has reviewed the motion filed by the [State] in this case. Following review and consultation with counsel, the Board has decided that it does not oppose this motion." Supp. App. to Op. Br. at 8. In this appeal, however, the Board of Parole submitted a letter stating that it "has always maintained that [the TIS Act]

4

On January 24, 2014, the Superior Court issued an order addressing both of the State's petitions.[15] In determining that Barnes was eligible for parole, the Superior Court relied on a previous decision of that court finding that DUI sentences are non-TIS offenses,[16] but nonetheless concluded that Barnes should not have been released because he had not completed the portion of his sentence that was mandatory under 21 *Del. C.* § 4177.

Barnes then appealed and the State filed a cross-appeal of right under 10 *Del. C.* § 9902(e). Shortly thereafter, Barnes filed a notice of voluntary dismissal of his appeal because his term of incarceration would have ended by the time his appeal was decided, and thus, the issue of his incarceration had become moot. The State, however, wished to maintain its cross-appeal, and both parties filed briefs. After hearing oral argument, this Court decided to resolve the central question—whether a felony DUI is covered by the TIS Act—*en banc*, after briefing and oral argument, as a matter of public importance.[17]

---

amended Title 11 and Title 16 offenses only . . . . [and] that it does maintain authority over any/all Title 21 cases." App. to Cross-Appelle's Ans. Br. at 1.

[15] *See* Order. The Superior Court also formally denied the State's motion to correct an illegal sentence as meritless. *See* Order at *2 ("The State . . . filed an emergency motion to correct an illegal sentence, which is an inappropriate motion because the sentence was not illegal. That motion is denied as meritless.").

[16] Order at *2 (citing *State v. Clyne*, 2002 WL 1652149, *4 n.6 (Del. Super. July 22, 2002)).

[17] *See State v. Barnes*, No. 52, 2014 (Order) (Del. Nov. 13, 2014) ("[W]e believe that the State is entitled to maintain its cross-appeal under 10 *Del. C.* § 9902(e)1 because its cross-appeal asserts that the Superior Court erred in denying its motion to correct an illegal sentence and that motion in essence challenged the underlying judgment of conviction. Although defendant Barnes's appeal is ambiguous as to which order it challenges, it involves the same issue, and in challenging the grant of mandamus, it also contested the legality of the original judgment of conviction. And because the substantive issue the State raises—whether a felony DUI offense is covered by the Truth In Sentencing Act—is very important, this is a fitting matter for review under 10 *Del. C.* § 9903. Indeed, the substantive issue is important enough that it should be addressed *en banc* after full briefing on the merits."); *see also* 10 *Del. C.* § 9902(e) ("The State

5

Accordingly, the Court appointed the Public Defender, who represented Barnes, to support the position that felony DUIs are not covered by the TIS Act. Although Barnes did not wish to pursue his appeal given his release, for the sake of clarity, we refer to him as the proponent of the position that the TIS Act does not apply to felony DUI offenses. Barnes took that position in his briefing and in oral argument in front of this Court, before the Public Defender was appointed to submit additional briefing.[18]

## IV. ANALYSIS

The parties dispute whether the TIS Act eliminated parole for all crimes contained in the Delaware Code, including felony DUI offenses contained in Title 21, or only crimes contained in Titles 11 and 16. The State argues that because the TIS Act states that it applies to "all crimes," persons serving prison sentences for felony DUIs, which are crimes under the definition in Title 11,[19] are ineligible for parole. By contrast, Barnes contends that the TIS Act provisions that eliminated parole only apply to crimes contained in Titles 11 and 16, because the TIS Act only amended and referred to statutes

shall have an absolute right to appeal to an appellate court any ruling of a lower court on a question of law or procedure adverse to the State in any case in which the accused was convicted and appeals from the judgment, except that the decision or result of the State's appeal shall not affect the rights of the accused unless the accused, on his or her appeal, is awarded a new trial or a new sentencing hearing. Once the State perfects its cross-appeal, the appellate court shall review and rule upon the questions presented therein regardless of the disposition of the defendant's appeal."); 10 *Del. C*. § 9903 ("The State may apply to the appellate court to permit an appeal to determine a substantial question of law or procedure, and the appellate court may permit the appeal in its absolute discretion. . . . [and] the court may require the Public Defender of this State to defend the appeal and to argue the cause.").

[18] *See* Cross-Appellee's Ans. Br. at 13-16.

[19] *See* 11 *Del. C*. § 233 defines a "crime or offense" as "an act or omission forbidden by a statute of this State and punishable upon conviction by: (1) Imprisonment; or (2) Fine . . . ." Because felony DUI offenses are punishable by both imprisonment and fines, they are crimes under the Title 11. *See* 21 *Del. C*. § 4177.

6

contained in those titles.[20]  Barnes also points out that for nearly a generation, the Board of Parole and the Superior Court have operated under the understanding that felony DUI offenses are eligible for parole, and SENTAC adhered to that position in its 2014 Benchbook.

In addressing this matter, we hew to a narrow version of the dispute before us, which is whether defendants convicted of felony DUI offenses under 21 *Del. C.* § 4177 are eligible for parole.  Because the debate about this specific question arises twenty years after the adoption of felony DUIs, it would be hazardous to make any broader pronouncement about the complicated interaction of the various Code titles than is necessary to resolve this appeal.

We review issues of statutory construction *de novo*.[21]  The starting point for the interpretation of a statute begins with the statute's language.[22]  When a statute is susceptible to two different interpretations, as it is here,[23] the court is required to interpret the statute based on "available, relevant information and evidence."[24]

We acknowledge that the State's argument is a strong one as an initial matter.  If one were interpreting the Code in 1995, shortly after the adoption of felony DUIs, this

---

[20] As Barnes points out, the TIS Act itself is titled "An Act to Amend Title 11 and Title 16 to Provide for Truth in Sentencing."

[21] *See Snyder v. Andrews*, 708 A.2d 237, 241 (Del. 1998).

[22] *See Freeman v. X-Ray Assocs., P.A.*, 2010 WL 2685732, at *4 (Del. May 12, 2010) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1246 (Del. 1985)) ("We must give effect to the legislature's intent by ascertaining the plain meaning of the language used.").

[23] *See, e.g.*, *Harvey v. City of Newark*, 2010 WL 4240625, at *6 ("[I]t would seem rare indeed to discover that a practical construction that had been relied upon for many years was based on an entirely implausible reading of the text at issue.").

[24] 2A Sutherland *Statutory Construction* § 45:2 (7th ed.).

Court might take the position that the better reading of the statute is the one that the State now advances.[25]  But, the contrary interpretation advanced by Barnes is also a reasonable one.  The most direct provision of the Code upon which the State relies in this appeal is 11 *Del. C.* § 4205, which states, "[n]o sentence to Level V incarceration *imposed pursuant to this Section* is subject to parole."[26]  Admittedly, § 4177 makes a fifth DUI offense a class E felony, and § 4205 specifies the backbone terms of incarceration for each class of felonies.  But the Code also states that Title 11 will not govern the sentencing for crimes in other titles if the "context otherwise requires."[27]  Section 4177 of Title 21 is largely a self-contained statute, and includes detailed prescriptions for sentencing a DUI offender, including the maximum and minimum term of incarceration.[28]  As such, a court need not look to § 4205 when sentencing a felony DUI offender, as the State conceded at oral argument.  In fact, to do so would be hazardous, because § 4205 only fixes the maximum term of incarceration for a class E felony at five

---

[25] Because the TIS Act applies to "all crimes," and felony DUI offenses are crimes under the Code, the State's argument that the TIS Act eliminated parole for felony DUI offenses is reasonable.  *See* TIS Act § 4; 11 *Del. C.* § 233; 21 *Del. C.* § 4177.  Such a reading would also be consistent with the policy goal of the TIS Act, "[t]o achieve truth in sentencing by assuring that the public, the State and the Court will know that the sentence imposed by the Court will be served by the defendant; and that, the defendant will know what the actual effect of the sentence will be," and accord with the General Assembly's recent amendments to § 4177, which demonstrate an intent to treat felony DUIs as serious crimes.  *See* TIS Act § 1A; 77 Del. Laws, ch. 162 (amending 21 *Del. C.* § 4177); 77 Del. Laws, ch. 167 (same).

[26] 11 *Del. C.* § 4205(j) (emphasis added).

[27] *See* 11 *Del. C.* § 103 (stating that Title 11 sets the punishment for offenses contained within Title 11 and also for "any offense defined in a statute other than this Criminal Code" "unless otherwise expressly provided, or unless the context otherwise requires.").

[28] Section 4177 provides for a five-year maximum sentence for class E felony DUIs, and also includes detailed provisions addressing the appropriate sentence for DUIs of all classes.  *See, e.g.*, 21 *Del. C.* §4177(d)(5) ("For a fifth offense occurring any time after 4 prior offenses, be guilty of a class E felony, be fined not more than $10,000 and imprisoned not less than 3 years nor more than 5 years.").

years. This would not give a judge enough information to sentence a class E felony DUI offender, such as Barnes, because § 4177 has detailed provisions governing the sentence range that must be followed in sentencing such an offender and the minimum amount of time that he must serve.[29]

Reading the Code to continue parole eligibility for felony DUI offenders is not only plausible, it the interpretation that has been held by the Superior Court and the Board of Parole—both composed of sophisticated, repeat players in our criminal justice system, who grapple with the Code on a daily basis—for the entire period since DUIs were made felonies in 1995. The Superior Court has twice addressed the question raised in this appeal and each time concluded that Title 21 offenses are not subject to the TIS Act.[30] The Attorney General was a party to both of those cases, but did not challenge the Superior Court's finding in either, despite the reality that its acquiescence ensured that the defendants would not be subject to provisions of the TIS Act that would have otherwise limited the amount of good time credit available to each.[31] In addition, the

---

[29] *See id.*

[30] *See State v. Clyne*, 2002 WL 1652149, *4 n.6 (Del. Super. July 22, 2002) ("Driving Under the Influence of Alcohol is not encompassed by Delaware's Truth In Sentencing . . . Act. Petitioner's sentence, therefore, is a non-TIS sentence."); *Owens v. State*, 2010 WL 8250841, *2 (Del. Super. Dec. 6, 2010) (citing *Clyne* for the proposition that "driving under the influence . . . is a non-TIS sentence").

[31] In *Clyne*, the Superior Court determined that because the TIS Act did not apply to Title 21 offenses, the amendments that reduced good time credit for offenders did not apply. Accordingly, the Superior Court referred to "old law"—that is, the provisions of Title 11 that had been in effect before the TIS Act was enacted—to compute the defendant's good time credits for his felony DUI offense. 2002 WL 1652149, *4 n.6 (Del. Super. July 22, 2002). In 2010, the General Assembly amended Title 11 to ensure that the TIS Act provisions for good time credits would be consistently applied to all offenses, other than a life sentence, thus overruling *Clyne*. *See* Order at *3-4. This amendment formed the basis for the Superior Court's decision to refer to

9

Board of Parole, which has authority to release on parole persons incarcerated for non-TIS sentences,[32] claims that it has continually exercised jurisdiction over Title 21 offenses since the passage of the Act in 1989, and has granted parole to persons incarcerated for DUI offenses.[33]

Moreover, SENTAC stated that Title 21 offenses are not covered by the TIS Act in its 2014 Benchbook, which is used by all judges and attorneys who handle criminal cases.[34] SENTAC is a committee composed of "four members of the judiciary . . . appointed by the Chief Justice, the Attorney General, the Public Defender, the Commissioner of Correction and four members at large."[35] It thus represents key stakeholders in our criminal justice system. In addition, the General Assembly has given SENTAC statutory authority to interpret the Code to establish "detailed, objective criteria" for judges to use when assigning punishment for offenders.[36]

The consistent position taken by both the judicial and administrative branches supports the plausibility of Barnes' interpretation for a compelling reason. It suggests

---

the TIS Act when allocating good time credit for Barnes' prison sentence for his fifth felony DUI, even after it had determined that the offense was not subject to the TIS Act. *Id.*

[32] 11 *Del. C*. §§ 4346; 4354.

[33] In this appeal, the Board of Parole submitted a letter stating that it "has always maintained that [the TIS Act] amended Title 11 and Title 16 offenses only . . . . [and] that it does maintain authority over any/all Title 21 cases." App. to Cross-Appelle's Ans. Br. at 1. The State does not contest the Board's rendition of history, other than pointing out that it cannot verify it because the Board of Parole does not maintain records of the types of applications it grants.

[34] *See* 2014 SENTAC Benchbook at 88 ("Title 21 and Title 23 Offenses. These offenses are not covered by Truth in Sentencing but are provided as a reference for commonly prosecuted motor vehicle offenses: . . . Driving a Vehicle While Under the Influence. . . ."), *available at* http://courts.delaware.gov/superior/pdf/benchbook_2013.pdf.

[35] The Delaware Sentencing Accountability Commission (SENTAC), State of Delaware, *available at* http://cjc.delaware.gov/sentac/sentac.shtml.

[36] 11 *Del. C*. §§ 6580(b); 6581(c).

that, for a generation, none of the key governmental stakeholders most involved in implementing the felony DUI provisions of the Code—the Department of Justice, the Public Defender, the Department of Correction, the Board of Parole, SENTAC, and the Superior Court—believed the enactment of the TIS Act to have deprived the Board of Parole of authority to grant parole to offenders convicted under § 4177.[37] Their understanding is entitled to strong consideration when giving practical effect to what the Code means, given the important role that the Superior Court, Board of Parole, and SENTAC play in giving life to the Code in the most central way relevant to this appeal: how the Code operates to impose punishment on offenders.

---

[37] *See, e.g.*, *Council 81, American Fed'n of State, County and Municipal Employees v. Delaware*, 293 A.2d 567, 571 (Del. 1972) ("In seeking legislative intent, we give due weight to the practices and policies existing at the time [the statute] was enacted . . . . A long-standing, practical, and plausible administrative interpretation of a statute of doubtful meaning will be accepted by this Court as indicative of legislative intent."); *cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.") (internal citations omitted); *Vassallo v. Haber Electric Co.*, 435 A.2d 1046 (Del. 1981) ("An administrative agency's construction of regulations enacted by it and statutes it administers are given great weight by the courts, provided said construction is not clearly erroneous."); *State Farm Mut. Auto Ins. Co. v. Mundorf*, 794 A.2d 215 (Del. 1995) ("Although the interpretation of a regulation is ultimately a question of law for a court to decide, substantial weight and deference is accorded to the construction of a regulation enacted by an agency which is also charged with its enforcement."); *Division of Social Services of Dept. of Health and Social Services v. Burns*, 438 A.2d 1227 (Del. 1981) ("This deference is reflected in the standard of judicial review that an administrative agency's interpretation of its rules and regulations will not be reversed unless clearly erroneous.").

When a statute has been applied by courts and state agencies in a consistent way for a period of years, that is strong evidence in favor of that interpretation.[38] Under the doctrine of *stare decisis*, we must take seriously the longstanding interpretation of a statute held by our Superior Court, especially when it has been relied upon by the key actors in our criminal justice system.[39] The doctrine of *stare decisis* exists to protect the settled expectations of citizens because, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."[40] The same principles also explain the weight given to long-

---

[38] *See, e.g.*, *Vegso v. Bd. of Trustees of the Employees Ret. Sys. of New Castle County*, 1986 WL 9019, at *4 (Del. Super. Aug. 20, 1986) (where legislation is "doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent") (citing *Delaware v. Mayor of Wilmington*, 163 A.2d 258, 264 (Del. 1960)); *J.N.K., LLC v. Kent County Levy Court*, 974 A.2d 197, 209 (Del. Ch. 2009) (citing *Delaware v. Mayor of Wilmington* and holding that deferring to a county's interpretation of its own code is proper when the interpretation is "long-standing"); *Green v. Sussex County*, 668 A.2d 770, 775 (Del. Super. 1995) (citing *Delaware v. Mayor of Wilmington* for the same proposition); *McCusker v. Ret. Comm. of the City of Dover*, 1986 WL 13993, at *3 (Del. Super. Nov. 21, 1986) (same); 2A Sutherland *Statutory Construction* § 45:2 (7th ed. 2010) (same).

[39] *See Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 124 (Del. 2006) ("Under the doctrine of *stare decisis*, settled law is overruled only for urgent reasons and upon clear manifestation of error.") (internal quotations omitted); *Oscar George, Inc. v. Potts*, 115 A.2d 479, 481 (Del. 1955) ("*stare decisis* means that when a point has been once settled by decision it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside . . . ."); *Harvey v. City of Newark*, 2010 WL 4240625, *6 (Del. Ch. Oct. 20, 2010) ("When the interpretation of a statute has been the subject of litigation and the court has read the statute in a certain way, that interpretation should not be lightly set aside by future courts."); *cf.* 3 Sutherland *Statutory Construction* § 61:1 (7th ed.) (citing *Shaw v. Merchants' Nat. Bank*, 101 U.S. 557(1879), for the proposition that courts should interpret statutes to make "the least, rather than the most, change in common law"); *Johnson v. Mathews*, 539 F.2d 1111 (8th Cir. 1976) ("Ambiguities must be resolved in favor of that interpretation which affords a full opportunity for equity courts to exercise their traditional practices.").

[40] *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994); *see also Oscar George, Inc.*, 115 A.2d at 481 (*stare decisis*'s "support rests upon the vital necessity that there be stability in our courts in adhering to decisions deliberately made after careful consideration"); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 854 (1992) (noting the importance, in

standing administrative interpretations that have been relied upon by the public.[41] Predictability and certainty in the law is all the more important when the statute in question involves criminal penalties, as it does here.[42]

Yet after years of acquiescence, the State now asks this Court to deem this settled interpretation implausible under the plain language of the statute, even though it has been held by sophisticated stakeholders in our criminal justice system for over a decade. And it asks us to weigh in even though the General Assembly is aware of the long-standing, contrary interpretation and has not acted to alter it. "[W]hen the prior judicial

reevaluating the rule set forth in *Roe v. Wade*, of "whether the rule's limitation on state power could be removed without serious inequity to those who have relied upon it or significant damage to the stability of the society governed by it"); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (*stare decisis* is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process"); *United States v. Title Ins. Co.*, 265 U.S. 472, 485 (1924) (noting the importance of citizens' ability to rely on settled law, and the court's inclination to avoid causing "injurious results" to those who have relied on that law in the event that the court alters it); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) ("[O]ur reexamination of well-settled precedent could nevertheless prove harmful . . . . To overturn a decision settling one . . . matter simply because we might believe that decision is no longer 'right' would inevitably reflect a willingness to reconsider others. And that willingness could itself threaten to substitute disruption, confusion, and uncertainty for necessary legal stability."); Lewis F. Powell, Jr., *Stare Decisis and Judicial Restraint*, 47 WASH. & LEE L. REV. 281, 289-90 (1990).

[41] *See, e.g.*, *Skidmore v. Swift & Co.*, 323 U.S. 134, 137-40 (1944) (holding that agency interpretations of ambiguous statutes are entitled to respect by courts to the extent that they have persuasive power based on consistency, factual basis, and expertise); *Helvering v. Griffiths*, 318 U.S. 371, 403 (1943) (deferring to an administrative interpretation of the Internal Revenue Code that had been held and enforced by the relevant government agencies for seven years because a contrary result would create hardship for taxpayers, unsettle tax administration, and subject the government agencies to many demands that the Court could not "anticipate and provide for").

[42] *Cf. Busic v. U.S.*, 446 U.S. 398 (1980) (noting that the Court's holding is consistent with "the canons of statutory construction that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"); *State v. Haskins*, 525 A.2d 573, 576 n.3 (Del. Super. 1987) ("[W]hen a criminal statute is ambiguous, it should be construed against the State and read in favor of the defendant."), *rev'd on other grounds*, 540 A.2d 1088 (Del. 1988); 3 Sutherland *Statutory Construction* § 59.03 (stating the general principle that ambiguous penal statutes are strictly construed against the government).

interpretation was subject to being overturned by the operation of the legislative process and was not overturned, the justification for departing from *stare decisis* is even more tenuous."[43]  A fundamental canon of statutory construction states that "[t]he long time failure of [the legislature] to alter [a statute] after it had been judicially construed . . . is persuasive of legislative recognition that the judicial construction is the correct one."[44]

We know the General Assembly is aware that the Board of Parole continues to exercise jurisdiction over persons imprisoned for crimes contained in Title 21 because it considered legislation that would have clarified the application of the TIS Act last session.[45]  The fact that the Board of Parole's exercise of jurisdiction over Title 21 offenses has been brought to the attention of General Assembly, who has not altered it,

---

[43] *Harvey v. City of Newark*, 2010 WL 4240625, at *7.

[44] *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 488 (1940); *see also IBP, Inc. v. Alverez*, 546 U.S. 21, 32 (2005) ("Considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades."); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) ("[W]e must bear in mind that considerations of *stare decisis* weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation."); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 260 (2008) (Roberts, C.J., concurring) ("In matters of statutory interpretation, where principles of *stare decisis* have their greatest effect, it is important that we not seem to decide more than we do."); *Hilton*, 502 U.S. at 202 (1991) ("Congress has had almost 30 years in which it could have corrected our decision in *Parden* if it disagreed with it, and has not chosen to do so.  We should accord weight to this continued acceptance of our earlier holding.  *Stare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision . . . ."); *cf. Bob Jones University v. United States*, 461 U.S. 574 (1983); *Grove City College v. Bell*, 465 U.S. 555, 568 (1984); 82 C.J.S. *Statutes* § 466 ("A long-standing administrative construction of a statute is accorded great weight in the determination of legislative intent because the legislature is presumed to have acquiesced in that construction if it has not amended the statute.").

[45] The General Assembly ultimately tabled H.B. 415, which would have amended the TIS Act to state: "All Title 21 felony offenses shall be covered by this Act and any amendments thereto." App. to Answering Br. at 135.  The record does not indicate why the Bill was tabled.

further cautions against our taking action to disrupt the settled sentencing practices employed by courts, the Department of Correction, and the Board of Parole.[46]

For the foregoing reasons, we adhere to *stare decisis*, the principles of consistency and predictability we have articulated, and therefore hold that the TIS Act does not apply to felony DUI offenses under 21 *Del. C.* § 4177. If the General Assembly wishes to amend the Code to alter this long-standing interpretation, it is free to do so.

---

[46] *See United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.") (quoting *Apex Hosiery*, 310 U.S. at 489).