IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     :
DEPARTMENT OF NATURAL   :
RESOURCES AND      :
ENVIRONMENTAL CONTROL,   :
             :
  Appellant,      :  K17A-09-001 JJC
             :  In and for Kent County
             :
  v.         :
             :
MCGINNIS AUTO & MOBILE   :
HOME SALVAGE, LLC,    :
             :
  Appellee.      :


## OPINION

Submitted: February 8, 2019
Decided:  February 21, 2019


Ralph K. Durstein, III, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the Appellant*.


John W. Paradee, Esquire, Daniel F. McAllister, Esquire, & Stephen A. Spence, Esquire, Baird, Mandalas, Brockstedt, LLC, Dover, Delaware, *Attorneys for the Appellee*.


**Clark, J.**

Appellant Department of Natural Resources and Environmental Control (hereinafter "DNREC") appeals an Environmental Appeals Board (hereinafter "the Board" or "the EAB") decision in favor of McGinnis Auto & Mobile Home Salvage, LLC (hereinafter "McGinnis"). DNREC had cited McGinnis for a series of alleged environmental violations. It then issued an order on August 2, 2016, pursuant to its cease and desist authority found in 7 *Del. C.* § 6018 (hereinafter "Section 6018"). The cease and desist order contained both prohibitive and affirmative orders. In addition to requiring McGinnis to cease all alleged violations, it directed McGinnis to remediate its site within thirty days and account for solid waste at its facility. McGinnis challenged the legality of the order and appealed it to the EAB. In its EAB appeal, McGinnis argued that the Secretary exceeded his cease and desist authority by ordering McGinnis to take affirmative corrective action. DNREC countered that it has authority to issue mandatory injunctions based upon its statutory authority to issue cease and desist orders.

The EAB agreed with McGinnis and found that the Secretary's cease and desist power permits him to prohibit conduct but not to mandate corrective action. This case presents an issue of first impression regarding the scope of this agency's "cease and desist" power. For the reasons that follow, the provision in DNREC's enabling statute authorizing its Secretary to issue cease and desist orders does not authorize it to mandate that a party pursue affirmative corrective action. Accordingly, the EAB's decision in this matter is **AFFIRMED.**

## I.    PROCEDURAL BACKGROUND

McGinnis owns and operates a business in Kent County, Delaware, that among other things, dismantles and salvages dilapidated mobile homes. On February 25, 2015, staff from DNREC conducted a site inspection of its premises.

2

After the inspection, DNREC cited it for improperly storing solid waste and operating a materials recovery facility without a permit. In DNREC's notice of violation, it demanded that McGinnis submit a detailed plan to remove the waste. DNREC also imposed a ninety-day deadline for McGinnis to submit an application for a resource recovery permit. McGinnis submitted a timely solid waste disposal plan to remove the solid waste by July 2016, but did not apply for a permit.

DNREC inspected the site again on March 30, 2016, and documented the same violations as the year before. It gave McGinnis a new deadline in July 2016, to remove the waste pile. Thereafter, McGinnis allegedly did not comply. The DNREC Secretary then issued Secretary's Order No. 2016-WH-0031 on August 2, 2016. The order provided:

> IT IS HEREBY ORDERED, based on the foregoing findings and pursuant to the authority vested in the Secretary by 7 *Del. C.* §6018 that Respondent shall:
> 1) Upon receipt of this Order, immediately cease and desist receiving and dismantling mobile homes and construction and demolition waste.
> 2) Within 30 days of receipt of this Order, remove all solid wastes including, but not limited to, discarded mobile homes and piles of construction and demolition waste on land and in containers. However, in accordance with the approval issued by Kent County in 1995, Respondent may store no more than two mobile homes.
> 3) Complete the above-referenced requirements in compliance with all applicable laws and regulations, and only utilize transportation companies, disposal facilities, and contractors holding valid permits.
> 4) Within 30 days of receipt of this Order, provide written documentation to the Department confirming the proper disposal or recycling of the solid wastes. Documentation shall include, but not be limited to, identification of the hauler used to transport the solid wastes as well as weigh tickets or other valid documentation representing authorized disposal or recycling.
> 5) Within 30 days of receipt of this Order, provide to the Department a list of all mobile homes received by McGinnis since 2001,

3

including, but not limited to, the date each mobile home was received by McGinnis, the vehicle identification number for each mobile home, and date of manufacture of each mobile home. Respondent shall also identify those mobile homes currently at the facility.

6) Within 30 days of receipt of this Order, provide a detailed explanation of McGinnis' inspection, handling, storage, disposal, and recycling procedures for all materials removed from, or contained within, mobile homes.

7) Should Respondent desire to continue receiving, dismantling and recycling mobile homes or other construction and demolition debris, Respondent shall provide to the Department a completed Resource Recovery Facility Permit Application within 30 days of receipt of this Order. Respondent shall not accept mobile homes or construction and demolition waste prior to such a permit being issued by the Department.

McGinnis appealed this order to the EAB. The parties, by stipulation, agreed that certain facts would be assumed only for purposes of resolving the scope of DNREC's authority under Section 6018. In the EAB appeal, McGinnis argued that the order exceeded the Secretary's cease and desist power because the mandates found in paragraphs (2) through (6) were equivalent to mandatory injunctions. DNREC countered that it had authority to issue all seven mandates pursuant to its broad statutory and regulatory powers.

The EAB found paragraphs (1) and (7) to fall within the Secretary's cease and desist power. The EAB found, however, that the Secretary "did not have adequate legal authority to impose paragraphs (2) through (6) of the order." The Board reasoned that DNREC's cease and desist power was "not the proper enforcement mechanism to mandate affirmative injunctive relief" and that "other, more appropriate, enforcement mechanisms" should have been used.

DNREC then appealed the EAB's decision to this Court, arguing that paragraphs (2) through (6) were lawful orders. Since McGinnis did not appeal the

Secretary's authority to issue paragraphs (1) and (7) of the order, only paragraphs (2) through (6) are at issue in this appeal.

## II.    Arguments of the Parties

Both parties briefed this matter well but cited little case authority because little is available.  Both concede that there is no Delaware authority addressing the scope of an agency's cease and desist authority.  Furthermore, DNREC identified no persuasive authority in federal administrative law or in the administrative law of other states that support expanding its cease and desist authority to the extent it advocates.  In briefing, the parties focused on DNREC's enabling statute, the Delaware Supreme Court's decision in *Formosa Plastics Corp. v. Wilson*.,[1] and authority discussing the nature and availability of injunctions in the Court of Chancery and federal courts.

On balance, DNREC likens its Secretary's authority to that of the Court of Chancery.  Namely, it argues that in the same way the Court of Chancery exercises its authority to mandate compliance with the law through injunctive relief, it too has broad authority to administratively order compliance and to monitor remediation.  It argues that the Secretary's order properly chose an approach designed to bring McGinnis into compliance within 30 days without resorting to litigation.  It also argues that the General Assembly intended this cease and desist authority to be an administrative alternative to seeking a mandatory injunction in the Court of Chancery.

DNREC further alleges that the EAB's order "would eviscerate efforts by DNREC to deal administratively with serious statutory and regulatory violations presenting imminent risk to the environment and to public health."  DNREC relies

---

[1] *Formosa Plastics Corp. v. Wilson*, 504 A.2d 1083 (Del. 1986).

heavily upon a provision in Chapter 60 of Title 7 (hereinafter "Chapter 60") that provides that its powers should be construed liberally in order to preserve the land, air and water resources of Delaware.[2] It argues that the Secretary's cease and desist orders are not limited in scope, but only in duration. Accordingly, DNREC argues that the Secretary, pursuant to Section 6018, has the power to order remediation, future compliance, and to prevent future violations.

McGinnis counters that cease and desist powers grant the Secretary the authority to order a violator to *cease* an environmental violation, but not to mandate a person *to take affirmative action* as would a mandatory injunction. It also argues that injunctive relief falls exclusively within the Court of Chancery's jurisdiction. McGinnis further argues that there would be a structural incongruity in permitting such orders because EAB appeals are to the Superior Court. That, McGinnis argues, would provide for appellate review of an injunction in a court that cannot issue injunctions. McGinnis also emphasizes that there is no requirement in Section 6018 for the Secretary to balance the equities before issuing such an order. In contrast, the Court of Chancery may only issue mandatory injunctions following a full trial on the merits or a decision on the merits based upon uncontroverted facts.[3]

Furthermore, McGinnis emphasizes provisions in Chapter 60, of Title 7, Delaware Code (hereinafter "Chapter 60") apart from Section 6018. For instance, it argues that the General Assembly addressed cease and desist orders separately from DNREC's authority to seek temporary restraining orders, preliminary injunctions,

---

[2] *See* 7 *Del. C.* § 6020 (stating that "[t]his chapter, being necessary for the welfare of the State and its inhabitant, shall be liberally construed in order to preserve the land, air and water resources of the State.").

[3] *See C & J Energy Services, Inc. v. City of Miami General Employees' and Sanitation Employees' Retirement Trust*, 107 A.3d 1049, 1071 (Del. 2014) (citations omitted) (holding that "[t]o issue a mandatory injunction requiring a party to take affirmative action . . . the Court of Chancery must either hold a trial and make findings of fact, or base an injunction solely on undisputed facts.")

and permanent injunctions in the Court of Chancery. This, McGinnis argues, demonstrates that they are different remedies.

## III. STANDARD OF REVIEW

This Court's appellate review of EAB decisions is limited to determining whether the Board's decision was supported by substantial evidence and whether it is free of legal error.[4] The parties stipulated to the facts at issue and appeal only the EAB's decision regarding a legal conclusion.[5] This Court's standard of review for errors of law is *de novo*.[6]

## IV. ANALYSIS

The Secretary's order is entitled: "Secretary's Order to Cease and Desist, Issued Pursuant to 7 *Del. C.* § 6018." Accordingly, this appeal is limited to a single issue – whether Section 6018 authorizes the Secretary to mandate affirmative corrective action similar to a mandatory injunction. The question before the Court is not whether DNREC should have the authority to issue injunctive-like orders in the vein of paragraphs (2) through (6). Rather, it is whether the General Assembly provided the agency the ability to do so in Section 6018. That provision provides:

---

[4] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *General Motors v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).

[5] *See* 7 *Del. C.* § 6008 (g) (providing that "*[a]t any time* after the appeal to the Board, the parties may, but stipulation proceed directly to the Superior Court" (emphasis added)). The limited stipulation by the parties did not establish a violation by McGinnis. Rather, it focused the issue upon the limits to the Secretary's authority in these circumstances. The Court is mindful of authority applicable to the Unemployment Insurance Appeal Board and the Industrial Accident Board requiring interlocutory appeals to this Court to be dismissed pursuant to Superior Court Civil Rule 72(i). However, the enabling statutes for those agencies do not include a provision similar to 7 *Del. C.* § 6008(g). In any event, neither party asserted that this matter was interlocutory. The Court finds that 7 *Del. C.* § 6008(g) confers jurisdiction upon the Superior Court to consider this appeal.

[6] *Hoffecker v. Lexus of Wilmington,* 36 A.3d 349, 2012 WL 341714, at *1 (Del. Feb. 1, 2012) (TABLE).

[t]he Secretary shall have the power to issue an order to any person violating any rule, regulation *or* order *or* permit condition or provision of this chapter to *cease and desist* from such violation; provided, that any cease and desist order issued pursuant to this section shall expire (1) after 30 days of its issuance, or (2) upon withdrawal of said order by the Secretary, or (3) when the order is suspended by an injunction, whichever occurs first.[7]

The General Assembly provides for an agency's duties in the legislative act that creates the agency.[8] An agency also derives its authority solely from the statutes that create it. Section 6018 provides the Secretary the authority to issue a cease and desist order for a violation of "any rule, regulation *or* order *or* permit condition *or* provision of this Chapter . . .." Accordingly, Section 6018's cease and desist enforcement authority covers all orders and regulatory violations across the broad spectrum of what DNREC regulates.

At the outset, the Court recognizes that in addition to permissibly issuing cease and desist orders, the Secretary has other significant general enforcement powers. As with the authority granted by Section 6018, these other powers apply to all legal orders of the Secretary and regulatory violations. They include, *inter alia*, the Secretary's authority to assess administrative penalties and to collect those penalties in the Superior Court,[9] to file civil penalty actions in Superior Court,[10] and to file for temporary restraining orders or permanent injunctions in the Court of Chancery.[11]

The majority of the parties' briefing focused on their opposing positions regarding whether paragraphs (2) through (6) of the Secretary's order exceed his

---

[7] 7 *Del. C.* § 6018 (emphasis added).
[8] *Delaware State Sportsmen's Association v. Garvin*, 196 A.3d 1254, 1268 (Del. Super. 2018).
[9] 7 *Del. C.* § 6005(b)(1).
[10] 7 *Del. C.* § 6005(b)(3).
[11] 7 *Del. C.* § 6005(b)(2).

authority because they constitute mandatory injunctive orders.[12]  McGinnis argues that these six orders exceed DNREC's authority because a Section 6018 cease and desist order is the equivalent of a prohibitory injunction.[13] McGinnis maintains that the actions ordered in paragraphs (2) through (6) seek affirmative corrective action and are the equivalent of mandatory injunctions.[14]

Since agencies powers are granted by statute, the Court must look to DNREC's enabling statute to determine the scope of its authority.   Under Delaware law, the goal of statutory construction is to determine and give effect to legislative intent.[15]  If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, a court's role is limited to an application of the literal meaning of the words.[16] Accordingly, the starting point for the interpretation of a statute is its language.[17]

The plain meaning rule of statutory construction refers to instances when the legislature's intent is so apparent from the face of the statute that there can be no question as to its meaning.[18]   Courts interpret the statute literally and consider statutory text to be the best evidence of legislative intent or will.[19]   Title 7 of the Delaware Code, including its Section 6018, does not define "cease and desist."   Nor do the parties cite case law, mandatory or persuasive, defining the scope of such an order.   Black's Law Dictionary defines a cease and desist order as: "[a] court's or

---

[12] *See Black's Law Dictionary* (10th ed. 2014) (defining a mandatory injunction as "[a]n injunction that orders an affirmative act or mandates a specified course of conduct. — Also termed affirmative injunction")

[13]*See Black's Law Dictionary* (10th ed. 2014) (defining a prohibitory injunction as "[a]n injunction that forbids or restrains an act").

[14] *See Black's Law Dictionary* (10th ed. 2014) (defining a mandatory injunction, in part, as one that "commands the defendant to do some positive act or particular thing").

[15] *Progressive Northern Ins. Co. v. Mohr*, 47 A.3s 492, 495 (Del. 2012).

[16] *In re Adoption of Swanson*, 623 A.2d 1095, 1096-07 (Del. 1993).

[17] *State v. Barnes*, 116 A.3d 883, 888 (Del. 2015).

[18] 2A Sutherland Statutory Construction § 46:1 (7th ed. 2018).

[19] 2A Sutherland Statutory Construction § 46:3 (7th ed. 2018).

agency's order *prohibiting* a person from continuing a particular course of conduct.[20] The common, ordinary meanings of both the words "cease" and "desist" mean to stop. Accordingly, at the outset, the common ordinary usage of the language used by the General Assembly in Section 6018 does not support DNREC's argument that Section 6018 authorizes DNREC to compel affirmative corrective action.

To the extent their remains uncertainty, when construing a statute using the rules of statutory construction, the statute must be viewed as a whole.[21] Because the General Assembly passes a statute as a whole, and not in parts or sections, statutes generally serve one general purpose and intent.[22] Consequently, each part or section of a statue should be construed in connection with every other part or section to produce a harmonious whole; it is not proper to confine interpretation to the one section to be construed.[23] When examining Section 6018 in the context of (1) the other sections in Chapter 60 and (2) Title 7 of the Delaware Code as a whole, the General Assembly demonstrated its intent to limit DNREC's authority under Section 6018 to prohibiting conduct.

First, in Chapter 60, Section 6018 limits the duration of DNREC's cease and desist power to a thirty-day period. Separately within Chapter 60, 7 *Del. C.* §6002(b)(2) enumerates the Secretary's power to *seek* an injunction or temporary restraining order from the *Court of Chancery* regarding continuing violations. Accordingly, within the same Chapter but apart from Section 6018, the General Assembly authorized DNREC to seek *court* injunctions to address violators. Elsewhere in Chapter 60 but apart from Section 6018, the General Assembly authorized the Secretary to order affirmative corrective action. It did so in only one

---

[20] *See Black's Law Dictionary* (10th ed. 2014) *(emphasis added).*
[21] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989).
[22] 2A Sutherland Statutory Construction § 46:5 (7th ed. 2018).
[23] *Id.*

10

location in Chapter 60 -- where it empowers the Secretary to order such action when opting to proceed with conciliation.[24]  In that limited context, the statute authorizes the Secretary to order "corrective action" which apart from an order to cease and desist, enables the Secretary to require a violator of an order to remediate something.[25]  The General Assembly's decision to include the phrase "corrective action" in Section 6005(b)(2) but to omit it from Section 6018 is presumed to be intentional.

Second, other Title 7 provisions demonstrate the language the General Assembly uses when it intends to permit the Secretary to mandate affirmative corrective action. For instance, provisions in Chapter 63 of Title 7, expressly permit the Secretary to order corrective action if he or she finds an imminent hazard caused by releases of hazardous waste.  There, the General Assembly authorizes the Secretary, when "hazardous waste may present an imminent and substantial hazard to the health of persons or the environment [to issue an order directing a polluter] to take such steps as are necessary to prevent or *eliminate the hazard*."[26]  There, with a thirty-day notice, the Secretary has express authority to order violators to "*take corrective action* within the time specified in the order."[27]  Provisions in other chapters in Title 7 also authorize the Secretary to order affirmative corrective action in limited areas.[28]  The General Assembly's choice to include language permitting the Secretary to order affirmative corrective action elsewhere in Title 7 but to not include it in Section 6018 further demonstrates the limits of Section 6018.

---

[24] *See* 7 *Del. C.* § 6005(b)(2) (providing that after the Secretary initiates the conciliation process, "[i]f no hearing is requested, . . . the Secretary may order that the correction be fully implemented by the proposed date . . ..").

[25] *Id.*

[26] 7 *Del. C.* § 6308(1) & (2).

[27] 7 *Del. C.* 6309 (a)(1) & (2).

[28] *See e.g.* 7 *Del. C.* § 7411(a)(authorizing the Department, with thirty-day notice, "to order compliance" with any requirement of Chapter 74 (which addresses underground storage tanks) to include affirmative corrective action).

DNREC cites one case decision supporting its argument that Section 6018's cease and desist power should be interpreted broadly enough to equate to a mandatory injunction. Namely, DNREC relies solely upon the Delaware Supreme Court's decision in *Formosa*.[29] In *Formosa*, the Supreme Court interpreted the Secretary's express authority to issue permits broadly enough to include the implied authority to revoke the same permits.[30] The Delaware Supreme Court found that while there is "no express statutory right to revoke these permits, the Secretary nevertheless has substantial enforcement responsibilities supporting his ultimate power of revocation."[31] In so holding, the Supreme Court recognized that the terms of DNREC's enabling statute "are broad and plenary."[32]

DNREC places particular emphasis on the portion of the *Formosa* decision providing that the statute provides DNREC "all necessary concomitant powers to give full force and effect to the clear legislative mandate of the Act."[33] For this reason, DNREC argues that the Supreme Court's logic in *Formosa* compels a broad reading of the Secretary's authority under Section 6018. Namely, it argues that because the Secretary may issue a cease and desist order and enforce it, he must have concomitant power to compel respondents to take affirmative corrective action, to account for their actions to date, and to report on their progress. These expanded powers, DNREC argues, are necessary to support its cease and desist authority.

*Formosa* does not provide for so broad a premise as DNREC advocates. Section 6018's clear language, when further considered in the context of DNREC's enabling statute as a whole, does not permit such an expansion. The Court recognizes that the *Formosa* decision recognized a broad implied authority for the

---

[29] 504 A.2d 1083 (Del. 1986).
[30] *Formosa*, 504 A.2d at 1088.
[31] *Id.*
[32] *Id.*
[33] *Id.*

Secretary to revoke a permit that he had issued. It did so, however, based upon a number of statutory provisions that provide remedies for permit violations.[34] In contrast to this list of concomitant authority to DNREC's permitting authority, there are no like concomitant powers of the Secretary relevant to cease and desist orders. Section 6018 merely provides one of Chapter 60's many remedies. There are no other provisions in Title 7 that reference Section 6018 and expand upon it as do the multiple permit-related provisions identified in the *Formosa* decision.

Finally, DNREC argues that it is counterintuitive to recognize DNREC's authority to revoke one violator's permit while prohibiting it from ordering corrective action against another violator who flouts his or her responsibility to operate with a permit. DNREC's argument is logical but leaves an issue for the General Assembly to consider, if it so chooses. In the case at hand, DNREC advocates expanding Section 6018's plain meaning beyond that which (1) its express language and (2) its reading in context with other Title 7 provisions can reasonably support.

## V. CONCLUSION

For the reasons discussed, the Environmental Appeals Board's decision is **AFFIRMED**. Because two of the seven paragraphs in the Secretary's August 2016 Order were not challenged in this appeal, and in light of the fact that Board made no binding evidentiary findings below, the matter is **REMANDED** to the Board to take action consistent with its discretion and in accordance with its orderly processes.

---

[34] Id. at 1089 (citing five separate provisions in Chapter 60, including Section 6018, that provide the Secretary broad enforcement authority regarding permit violations).