THE STATE OF DELAWARE, upon the relation of John P. Zebley, *et al.,* Plaintiffs, v. THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, *et al.,* Defendants.

(*July* 12, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Herman Cohen* and *Thomas Herlihy, Jr.*, for plaintiffs.

*Stewart Lynch*, Wilmington City Solicitor, for defendants.

Supreme Court of the State of Delaware, No. 17, 1960.

WOLCOTT, J.:

This case has been certified to us by the Superior Court of New Castle County. The certified questions require a construction of the statutes establishing the Firemen's Pension Fund of the City of Wilmington.

The four certified questions are as follows:

(1) Is the Council of The Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, obligated by the Statutes relating to the establishment of a Firemen's Pension Fund for members of the Bureau of Fire of the Department of Public Safety of the City of Wilmington (33

*Del. Laws,* Ch. 118 and the statutes amendatory thereof or supplemental thereto) to make appropriations to that fund when the cash and securities constituting said fund exceed the statutory reserve of $50,000, established by 33 *Del. Laws* Ch. 118, § 1 as amended, if the annual income of the fund and other sources of revenue going into and making up said fund are insufficient to meet the requirements of the pensioner-beneficiaries covered by such Statutes?

(2) Does the Board of Trustees of the Firemen's Pension Fund of the City of Wilmington have a legal right under the Statutes relating to the establishment of a Firemen's Pension Fund for members of the Bureau of Fire of the Department of Public Safety of the City of Wilmington (33 *Del. Laws* Ch. 118, and the Statutes amendatory thereof and supplemental thereto) to insist the said Pension Fund must be maintained in an amount of at least equal to the amount in the fund as of April 15, 1945?

(3) Does the Board of Trustees of the Firemen's Pension Fund of The City of Wilmington have a legal right under the Statutes relating to the establishment of a Firemen's Pension Fund for members of the Bureau of Fire of the Department of Public Safety of the City of Wilmington (33 *Del. Laws* Ch. 118 and the Statutes amendatory thereof and supplemental thereto) to refuse to permit the cash and securities in the Firemen's Pension Fund, in excess of the statutory reserve of $50,000 established by Section 1 of the Statutes (33 *Del. Laws* Ch. 118) as that section, as amended by 49 *Del. Laws* Ch. 328, § 1, to be utilized to meet the requirements of the pensioner-beneficiaries covered by such statutes when the annual income arising from investment of the fund and other current revenues (other than appropriations from the Council) coming into the fund are insufficient to meet the annual charges on the fund?

(4) Has the Board of Trustees of the Firemen's Pension Fund of the City of Wilmington, as established by Vol. 33, *Del.*

*Laws* Ch. 118, and as amended by subsequent statutes, and in particular 45 *Del. Laws* Ch. 167 and 45 *Del. Laws* Ch. 168, any present legal existence, with legal rights, powers and duties in view of the statutory changes enacted by the General Assembly in 1945, which by their terms made The Mayor and Council of Wilmington responsible for the payment of pensions for members of the Bureau of Fire of the Department of Safety of the City of Wilmington?

The controversy culminating in this litigation arises by reason of the present refusal of the City of Wilmington to appropriate money to pay firemen's pensions as long as there is in the Firemen's Pension Fund an accumulation of past income sufficient to pay current pensions.

On April 5, 1923, by 33 *Laws,* Ch. 118, a Firemen's Pension Fund Law for members of the Bureau of Fire of the City of Wilmington was enacted. By § 1 of that act it was provided that under certain conditions city firemen could retire and receive a pension to be paid monthly out of a fund established by said section. The section directed that at no time should the Fund be reduced below the sum of $100,000. It was further provided that if the moneys available should be insufficient to pay all pensions due in full, the pensions should abate proportionately.

By § 6 of the 1923 act, it was provided that all moneys collected from the payment of fines imposed upon firemen for various disciplinary reasons, moneys donated to the Fund, all rewards paid to firemen, togther with such sums as each fireman voluntarily agreed to pay to the Fund, required to be not less than 1% of the fireman's salary, should be accrued into the Firemen's Pension Fund created by § 1 of the act. § 6 also required the City of Wilmington to appropriate annually not less that $5,000 to the Fund.

By § 8 of the 1923 act, the Board of Trustees of the Firemen's Pension Fund, created by § 5 of the act, was authorized

to invest any part of the Pension Fund in certain designated securities.

On March 29, 1927, by 35 *Laws*, Ch. 88 the minimum amount of the Firemen's Pension Fund was reduced from $100,000 to $50,000.

On April 20, 1925, by 34 *Laws*, Ch. 58, a law was enacted imposing a tax equal to two percentum of gross premiums paid on fire insurance policies, and directing that the tax collected on premiums paid for fire insurance policies written on properties within the corporate limits of the City of Wilmington should be paid over to the Treasurer of the City of Wilmington to be credited by him to the Firemen's Pension Fund.

On April 16, 1945, § 6 of the 1923 act was amended to increase the contribution required of firemen desiring to qualify for pensions under the Firemen's Pension Fund Law. This act also further amended the 1923 law to require the City of Wilmington to appropriate annually to the Firemen's Pension Fund "such sum as may be required to meet all charges on said Firemen's Pension Fund not covered by the annual income on said Fund and the other revenues coming into said Fund."

By 45 *Laws*, Ch. 168, three additional sections were added to the 1923 law, *viz.*, §§ 11, 12 and 13.

By § 11 it was provided that any person having any pension rights under the 1923 act who accepted the benefits of a statute enacted the same day (hereafter more fully noted) should thereupon cease to have any pension rights under the 1923 law.

By § 12 it was provided that at such time as the annual income and other revenues of the Firemen's Pension Fund should be more than sufficient to take care of the annual charges upon that Fund, such excess of income should revert to the general use of the City of Wilmington. It was further provided that upon the death of the last person having any claim upon the Firemen's Pension Fund "the entire corpus of the Firemen's

Pension Fund and any income accrued thereon and any other revenues" shall be paid over and credited to the Sinking Fund of the City of Wilmington.

By § 13 it was provided that no fireman becoming such after April 16, 1945, the date of enactment, should be entitled to any pension under the 1923 law.

Simultaneously with the enactment of 45 *Laws*, Ch. 168 was enacted 45 *Laws*, Ch. 167. This act established a noncontributing pension system for the Department of Fire of the City of Wilmington and placed the entire expense of the payment of firemen's pensions on the City of Wilmington.

On June 8, 1951, by 48 *Laws*, Ch. 341, the 1923 Firemen's Pension Fund Law as amended by 45 *Laws*, Ch. 168 was further amended by the repeal of §§ 11, 12 and 13.

Simultaneously, on June 8, 1951, there was enacted 48 *Laws*, Ch. 340 which amended 45 *Laws*, Ch. 167 and provided that persons eligible for pensions under 45 *Laws*, Ch. 167, the noncontributing pension system, could elect to become eligible for pensions under the 1923 Pension Law, or to return to eligibility under that law. By § 2 of 48 *Laws*, Ch. 340, it was provided that 45 *Laws*, Ch. 167 was repealed in so far as it might become applicable to any person becoming a fireman after June 8, 1951.

The foregoing is the statutory history of the Firemen's Pension Fund. From the inception of the Firemen's Pension Fund System in 1923 the Fund out of various sources of revenue has paid pensions for which firemen and their dependents over the course of the years have become eligible. From the accumulations of income from all sources as of April 15, 1945 a Firemen's Pension Fund of $428,679.66, a portion of which was at that time invested in accordance with the provisions of 33 *Laws*, Ch. 118, § 8, had been built up.

For the years 1923 to 1943 inclusive, the City of Wilmington appropriated to the Fund the sum of $5,000 per annum. For

the years 1944 and 1945 the City of Wilmington appropriated the sum of $33,000 per annum, although for those years the minimum requirement of a $5,000 appropriation was still a part of the Firemen's Pension Fund Law.

Following the enactment in 1945 of 45 *Laws*, Ch. 168 obligating the City of Wilmington to appropriate such sum as should be required to defray the total cost of firemen's pensions in excess of the amount of income received by the Fund, the City of Wilmington thereafter continued the policy of appropriating such excess amount required, irrespective of the then corpus of the Firemen's Pension Fund which, for the purposes of this case, may be assumed to have remained in the same amount as it was in 1945.

In 1958 the policy of the City of Wilmington was reversed. The City Council, pursuant to an opinion of the City Solicitor, refused to appropriate any money to the Firemen's Pension Fund. The City took the position that its obligation to appropriate arose only when the Fund had been reduced to the statutory minimum by the use of income accumulations in excess of the balance. Thus, arose the present controversy.

The present controversy arises by reason of the 1945 amendments and their subsequent further amendment. By reason of these amendments, it is argued, the General Assembly has evidenced an intent to abolish as a practical matter the maintenance of the Firemen's Pension Fund as the source of payment of firemen's pensions. Apparently, it is tacitly conceded by the City, and we think rightly so, that prior to the 1945 amendments the statutory scheme contemplated the gradual accumulation of an invested Fund, which was regarded as the primary source for the payment of the pensions. We think this conclusion inescapable by reason of the absence of any provision of the law requiring the City to pay in full, and from the statutory provision for proportionate abatement of pensions in the event of a shortage of funds.

The Firemen's Pension Fund Law, as amended, however, after 1945, changed the source of payment by obligating the City of Wilmington by the appropriation of sufficient money to insure the payment of firemen's pensions irrespective of the total amount of income received by the Trustees of the Firemen's Pension Fund from the invested portion of the Fund and other sources. Left unchanged, however, was the requirement of a minimum balance of the Fund of $50,000, and the provision for the abatement of pensions in the event of insufficient money in the Fund. The inconsistency of the obligation imposed upon the City to insure the payment of the pensions in full and the provision for proportionate abatement of pension amounts is obvious.

The Firemen's Pension Fund currently consists of approximately the amount on hand in 1945, roughly in excess of $428,000 which represents accumulations of moneys above the amounts required for pensions received by the Trustees from firemen's contributions, appropriations by the City of Wilmington, and income derived from other sources, largely that from the tax imposed on the premiums of fire insurance policies.

The City of Wilmington argues that its sole obligation as an insurer of firemen's pensions is to appropriate annual funds only in the amount required to make up the difference between the total amount required and the total of annual income from all sources by the Trustees of the Fund. It is argued that this means that the Trustees must expend past accumulations of income for the purpose of paying pensions until the Fund has been drawn down to the minimum statutory balance of $50,000 before the City is obligated to appropriate anything for this purpose.

The City's argument is based upon a construction of §§ 1 and 6 of the Firemen's Pension Fund Law, as amended. The pertinent provision of § 6 is as follows:

"The Council of the Mayor and Council of Wilmington shall annually appropriate and credit to the Firemen's Pension Fund such sum as may be required to meet all charges on said Firemen's Pension Fund not covered by the annual income on said Fund and the other revenues coming into said Fund."

The City argues that this language clearly indicates an intent on the part of the General Assembly that all revenues of the Firemen's Pension Fund must be expended for pension payments before the City is obligated to appropriate money for the excess. The phrase, "other revenues coming into said Fund", is pointed to as indicating a legislative intent that accumulations of income to the Fund are also to be expended for the payment of pensions. It is argued that the mere fact of building up of the Fund has indicated that the Trustees have consistently treated the money received from the tax on insurance premiums as accumulations to the capital of the Fund and not "other revenues coming into said Fund", although § 6 clearly requires all income, from whatever source, to be expended for the payment of firemen's pensions.

The City also points to § 1 of the Firemen's Pension Law which contains within itself no direction to the Trustees to accumulate a Fund beyond the minimum sum of $50,000, and provides that pensions shall be paid out of the Fund, itself, and, in the event the Fund shall be reduced below the minimum statutory balance, the pensions payable shall be abated proportionately. This, of course, was written into the law prior to the requirement that the City of Wilmington discharge in full the pension obligations, and at a time when the City had not been made the guarantor of the payment of firemen's pensions.

The City then argues that §§ 1 and 6 must be construed in a manner to make them harmonious, and in such a manner as to give effect to all of the statutory language. It is urged that the only possible construction to achieve this end is that accumulations of income in the hands of the Trustees must be expended

for pension purposes down to the minimum statutory balance before the City has any obligation to appropriate.

We pause to note one difficulty with the City's position. If the proper construction is that the General Assembly intended the City to assume, in effect, the total obligation of pension payments, what useful purpose is served by maintaining a Fund of $50,000, admittedly insufficient to yield as income anything but a small percentage of the total pension bill which now runs annually in excess of $225,000?

In opposition, the Trustees of the Fund argue that the 1945 amendment to the Firemen's Pension Fund Law, which imposed the obligation upon the City to insure the payment of all firemen's pensions, clearly intended to preserve the Fund in the amount it was at the time of the passage of the amendment, *viz.*, $428,679.66.

The argument is based primarily upon a construction of § 6. The Trustees point to the phrase, "the annual income on said Fund and the other revenues coming into said Fund", as clearly referring only to moneys received by the Trustees after the passage of the 1945 amendment. They argue that if the then accumulations of income had been intended to be utilized for the payment of pensions, more apt language could have been found to express that result.

The Trustees point also to new § 12 enacted in 1945 (later repealed) which contains the following provisions, *inter alia*, "at such time as the annual income and other revenues of the Firemen's Pension Fund shall be more than sufficient" to pay the pensions, that then such excess shall be paid over to the Treasurer of the City of Wilmington. This provision, it is argued, clearly indicates that the General Assembly intended the Fund as it was in 1945 to remain in existence until such time as all pensions payable under the original Firemen's Pension Law had expired, or were reduced in such amount as to give an excess of income.

While the argument is not made specifically, it would seem that the concluding portion of § 12, providing that when the last pension had been discharged the Fund, itself, should be paid over into the Sinking Fund of the City of Wilmington, would support the contention made on behalf of the Trustees.

We think there is much to be said logically for both of the two constructions urged. Neither is so clear as to admit of no doubt as to its correctness. The inherent difficulty with the City's argument is the preservation of the Fund in some form at least after 1945, and the retention of the provision for abatement of pensions in the event of a shortage of money. The Trustees' position, on the other hand, is weakened by the imposition of full responsibility for the payment of pensions upon the City and the lack of any logical reason for the subsequent maintenance of the Fund as such. Under the circumstances, we think, we are faced with an ambiguous and perhaps inconsistent statute. We have a proper case for construction.

We think the answer to this particular controversy is found in the principle of statutory construction that where a statute is doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent. *Highfield v. Delaware Trust Co.*, 8 *W. W. Harr.* 116, 188 *A.* 919; *Delaware Steeplechase & Race Ass'n v. Wise*, 2 *Terry* 587, 27 *A.* 2d 357; 2 *Sutherland, Statutory Construction*, 3rd Ed., § 5103; *Crawford on Statutory Construction*, § 218.

As we have pointed out, for the period 1945 to 1958 the City of Wilmington acquiesced in the maintenance of the Fund at its 1945 level and appropriated without question such moneys as were required in addition to revenue received by the Trustees to defray the firemen's pension obligations. We think, in view of the two divergent possible and logical constructions of the statute in question, that we should accept this administrative interpretation of the law and give effect to it. We consequently

hold that the proper construction of the Firemen's Pension Fund Law, as amended, is to require the maintenance of the Fund at the 1945 level, and to require the City of Wilmington to appropriate such amount as is required in excess of the revenue of the Fund to defray the pension obligation.

The answer to this question contains within itself an answer to the second argument of the City of Wilmington to the effect that the various amendments to the Firemen's Pension Fund Law requiring the City of Wilmington to insure the payment of the firemen's pensions has had the effect of destroying the legal existence of the Board of Trustees of the Firemen's Pension Fund. Since we have upheld the Firemen's Pension Fund, it necessarily follows that the Board of Trustees created to administer it maintains its legal existence.

The answers to the various questions certified to us are therefore as follows:

1. The answer to this question is in the affirmative.

2. The answer to this question is in the affirmative.

3. The answer to this question is in the affirmative.

4. The answer to this question is in the affirmative.