# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
                           )
      v.                  )
                           )     I.D. No. 2304008917
DEVON D. YOUNG,       )
                           )
      Defendant.    )

Submitted: October 20, 2023
Decided: January 31, 2024

## OPINION

*Upon Defendant's Motion to Suppress Evidence*

**DENIED**

Evan D. Sweeney, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Cara M. Brophy, Esquire, Office of Defense Services, Dover, Delaware, *Attorney for Defendant*.

**Primos, J.**

Before the Court is a Motion to Suppress filed by Defendant Devon Young based on evidence that was seized from his home because he had allegedly violated the terms of his probation. Because the motion raised a legal issue, the Court held oral argument, and supplemental briefing followed.

Defendant Devon Young argues that 11 *Del. C.* § 4321(d), which addresses warrantless searches of probationers, is unambiguous and allows searches only of probationers' persons, not of their homes. The State agrees that Subsection 4321(d) is unambiguous but argues, contrary to the defense, that it authorizes searches of probationers' homes as well as their persons. The State argues in the alternative that, should the Court find the statute ambiguous, available legislative history establishes the General Assembly's intent to codify the then-current practice of allowing probation officers to search probationers' homes as well as their persons.

In the Court's view, Subsection 4321(d) is ambiguous because there are two reasonable, but divergent, interpretations of its plain language. After reviewing the pertinent legislative history for House Bill 524, the Court finds that the legislature's intent was for "searches of individuals" to include probationers' homes as well as their persons. This finding is further buttressed by the legal principle of *stare decisis*. For the reasons that follow, the Court finds that Defendant Devon Young's Motion to Suppress should be **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 17, 2023, members of the Delaware State Police ("DSP") Kent County Governor's Task Force and Dover Probation and Parole responded to a probation check at 3978 Barratts Chapel Road in Frederica, Delaware, with negative results.[2] At that time, Defendant Devon Young ("Mr. Young") was on Level III

---

[1] Citations in the form of "Ex. __" refer to the exhibits accompanying the motions and supplemental briefs. Citations in the form of "(D.I. __)" refer to docket items.
[2] Mot. to Suppress [hereinafter "Def.'s Mot."] at 2 (D.I. 9).

probation.[3]   Mr. Young was contacted by two law enforcement officers—his supervising officer, PO James, and DSP Detective Ciglinsky—at 10544 South DuPont Highway in Felton, Delaware.[4]  Mr. Young was handcuffed for a purported curfew violation, placed into Detective Ciglinsky's vehicle, and transported back to 3978 Barratts Chapel Road without incident.[5]

Subsequently, Mr. Young's residence was subjected to an approved administrative search that revealed a large amount of drugs, paraphernalia, and cash.[6]  On July 3, 2023, Mr. Young was indicted on four counts of Drug Dealing, three counts of Drug Possession, one count of Possession of a Controlled Substance, and one count of Possession of Drug Paraphernalia.[7]

Title 11 *Del. C.* § 4321(d) provides in pertinent part as follows:

Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department [of Correction] procedures while in the performance of the lawful duties of their employment ….[8]

On August 16, 2023, Mr. Young filed a motion to suppress evidence that was found at his residence (the "Motion"), arguing that 11 *Del. C.* § 4321(d) is unambiguous in that the General Assembly intended to authorize probation officers to conduct "searches of individuals," i.e., warrantless searches of individual probationers, but not of their homes or vehicles.[9]  Prior to searching a probationer's home, according to Mr. Young, a probation officer must first obtain a search warrant

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] 11 *Del. C.* § 4321(d).
[9] Def.'s Mot. at 3.

based upon probable cause.[10]  In advancing this argument, Mr. Young points to the Delaware Supreme Court's statement that "[p]articularly when conducting warrantless searches, probation officers may act only pursuant to explicit statutory authority."[11]  According to Mr. Young, Department of Correction ("DOC") Probation and Parole Procedure 7.19 ("Procedure 7.19")[12] exceeds that statutory authority in purporting to authorize warrantless searches of probationers' residences.[13]

In its written response filed on September 12, 2023, the State agreed that Subsection 4321(d) is unambiguous, but argued that it unambiguously authorizes searches of probationers' homes and vehicles as well as their persons.[14]  The State

---

[10] *Id.* at 4.

[11] *Id.* at 3 (quoting *McAllister v. State*, 807 A.2d 1119, 1125 (Del. 2002)).

[12] *See* State of Delaware DOC Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001) [hereinafter "Procedure 7.19"].  Subsequent to the events at issue in this case, on June 30, 2023, Procedure 7.19 was amended.  The 2001 version of Procedure 7.19, the version applicable here, allows for administrative searches of probationers' "living quarters, common areas, surrounding property, and automobile(s)." *Id.* at 14 § VI.G.1.b.  It further defines "Search/Living Quarters and Property" as "[a] search of the offender's living quarters, which should be confined to the area actually occupied by the offender, and may include common areas such as kitchen, bathroom, … etc. and the offender's property, i.e., [automobile]." *Id.* at 3 § IV.4. *See also Sierra v. State*, 958 A.2d 825, 829 (Del. 2008); *Jacklin v. State*, 16 A.3d 938, 2011 WL 809684, at *2 (Del. Mar. 8, 2011) (TABLE).  Procedure 7.19 also provides that

> the following factors should be considered when deciding whether to search: [1] The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband; [2] The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole; [3] There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law; [4] The information from the informant is corroborated; [5] Approval for the search has been obtained from a Supervisor.

*Sierra*, 958 A.2d at 829 (alterations in original). *See also id.* at n.17 (citing Procedure 7.19 § VI.E.).

[13] Def.'s Mot. at 3. Notably, Mr. Young does not argue that Delaware courts have "never allowed admin [sic] searches of probationers [sic] homes – in fact defendant concedes that numerous courts have done so [ ]; rather, defendant argues that the issue presented here – whether the statute upon which those searches rely supports such searches – has not been raised before, or addressed by the Court." *Id.* at n.3.

[14] State's Resp. to Def.'s Mot. to Suppress [hereinafter "State's Resp. to Mot."] at 8–10, 12 (D.I. 19).

pointed to the language "in accordance with Department procedures"—i.e., because Procedure 7.19 authorizes warrantless searches of probationers' homes and vehicles as well as their persons, the statutory language authorizes such searches.[15] The State further relied upon Supreme Court precedent finding that Subsection 4321(d) authorizes searches of probationers' homes, as well as a bench decision of this Court finding Subsection 4321(d) to be unambiguous in authorizing such searches.[16]

On September 20, 2023, the Court held oral argument on the Motion. At the close of the argument, the Court shared with the parties its inclination to find Subsection 4321(d) ambiguous and asked the parties to address, in supplemental briefing, five questions germane to the interpretation of the statute: (1) an explanation of the record of the committee vote on House Bill 524 ("HB 524");[17] (2) what, if any, additional legislative history exists regarding HB 524; (3) whether the fact that Subsection 4231(d) has been interpreted for over thirty years to authorize searches of probationers' residences, along with the fact that the General Assembly has not amended it during that period, sheds light on the appropriate interpretation of the provision; (4) the importance of committee reports as legislative history; and (5) the relevance to this case, if any, of the Delaware Supreme Court decision in *State v. Barnes*.[18] On October 20, 2023, both parties submitted their supplemental briefs.[19]

---

[15] *Id.* at 4–8.

[16] *Id.* at 8–10 (citing *id.* Ex. A (*State v. McCary*, I.D. No. 2005003004-MAA (Del. Super. Aug. 13, 2021) (TRANSCRIPT) (Bench Op. Tr.))).

[17] Del. H.B. 524, 135th Gen. Assem. (1990). When HB 524 was enacted on Oct. 5, 1990, it deleted the former 11 *Del. C.* § 4321 and substituted a revised Section 4321 in its place, including the current Subsection 4321(d), which has since remained unaltered.

[18] 116 A.3d 883 (Del. 2015); Hr'g on Mot. to Suppress Sept. 20, 2023 [hereinafter "Hr'g Tr."] at 37–40 (D.I. 23).

[19] Suppl. to Mot. to Suppress [hereinafter "Def.'s Suppl."] (D.I. 26); State's Suppl. Resp. to Def.'s Mot. to Suppress [hereinafter "State's Suppl."] (D.I. 27).

## DISCUSSION

To justify a warrantless search and seizure, the State must establish by a preponderance of the evidence that the officer's actions complied "with the requirements of the United States Constitution, the Delaware Constitution, and any applicable statutes."[20]

By consenting to probationary supervision, offenders "sacrifice some of their privacy rights in exchange for freedom from incarceration."[21] Our Supreme Court has consistently held that probation officers have authorization to conduct warrantless administrative searches of probationers' homes.[22] The Supreme Court has also held that a probation officer needs only "a reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car,"[23] and that probation officers act "reasonably so long as they substantially comply with [DOC] regulations."[24] DOC Procedure 7.19 was promulgated pursuant to statutory

---

[20] *State v. Garnett*, 2021 WL 6109797, at *3 (Del. Super. Dec. 23, 2021) (citations omitted).

[21] *Sierra*, 958 A.2d at 832 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987); *McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002)).

[22] *See, e.g.*, *McAllister*, 807 A.2d at 1124 (acknowledging that "[p]robation officers have authority to detain probationers and execute searches of their persons or property only to the extent granted to them by the General Assembly" but nonetheless finding administrative search of probationer's residence proper); *Fuller v. State*, 844 A.2d 290, 291 (Del. 2004) (holding administrative search of probationer's vehicle lawful although officers departed from departmental guidelines); *Donald v. State*, 903 A.2d 315, 319 (Del. 2006) (holding administrative search of probationer's residence was reasonable); *King v. State*, 984 A.2d 1205, 1208–10 (Del. 2009) (affirming denial of motion to suppress where probation officers substantially complied with Procedure 7.19's requirements for administrative search of probationer's home); *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010) (holding that probation officer substantially complied with DOC procedures for warrantless administrative search of probationer's apartment); *Jacklin*, 2011 WL 809684, at *2–3 (upholding administrative search of defendant's home when probation officer exercised substantial compliance with Procedure 7.19, which was adopted pursuant to Subsection 4321(d)); *Gibson v. State*, 135 A.3d 78 2016 WL 943842, at *1–2 (Del. Mar. 11, 2016) (TABLE) (holding officers had reasonable basis for searching defendant's residence pursuant to administrative search warrant).

[23] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012). *See also Lloyd v. State*, 292 A.3d 100, 106 (Del. 2023) ("Administrative searches must be supported by reasonable suspicion to be in compliance with Procedure 7.19.").

[24] *Murray*, 45 A.3d at 678.

6

authority under Subsection 4321(d),[25] and thus, lack of substantial compliance with it is a statutory violation warranting exclusion of evidence.[26]

## I.   TITLE 11 *DEL. C.* § 4321(d) IS AMBIGUOUS.

When construing a statute, the Court must first examine its text to address whether it is ambiguous.[27]   In doing so, the Court considers whether (1) the statute is reasonably susceptible of different conclusions or interpretations, or (2) a literal interpretation of its words would lead to "a result so unreasonable or absurd it could not have been intended by the legislature."[28]

If the Court finds that there is uncertainty, then "rules of statutory construction are applied … [and] the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."[29] Ambiguity is not found in a situation in which the parties merely disagree about the

---

[25] *King*, 984 A.2d at 1208; *see also Pendleton*, 990 A.2d at 419–20 ("[Subs]ection 4321(d) of the Delaware Code invests authority in probation and parole officers to conduct warrantless searches[.]").

[26] *See, e.g.*, *Culver v. State*, 956 A.2d 5, 7 n.1 (Del. 2008) ("Because we find that probation officers violated their clear statutory mandate, we do not reach any constitutional questions." (citing *Downs v. Jacobs*, 272 A.2d 706, 707 (Del. 1970))); *Walker v. State*, 205 A.3d 823, 826 (Del. 2019) (explaining that failure to determine reasonable suspicion in accordance with Procedure 7.19 is a statutory violation apart from the constitutional argument warranting suppression at a violation of probation hearing); *Lloyd*, 292 A.3d at 105 ("Delaware statutory law governs the exercise of the power of probation officers to search and arrest probationers without a warrant."). *See also State v. Monroe*, 2015 WL 721441, at *4 n.5, *6–7 (Del. Super. Feb. 18, 2015) (denying motion to suppress because administrative search of probationer's residence was reasonable due to substantial compliance with Subsection 4321(d) and Procedure 7.19); *State v. Holmes*, 2018 WL 5078014, at *5 (Del. Super. Oct. 16, 2018) (denying motion to suppress because there was reasonable suspicion and administrative search substantially complied with Procedure 7.19); *State v. Love*, 2018 WL 4672904, at *2–5 (Del. Super. Sept. 27, 2018) (finding there was reasonable suspicion and probation officer fully complied with Procedure 7.19; thus, administrative search of residence was lawful); *State v. Swiggett*, 2019 WL 245292, at *4–5 (Del. Super. Jan. 15, 2019) (finding there was reasonable suspicion, and thus evidence seized from probationer's bedroom was result of lawful administrative search).

[27] *Snyder v. Andrews*, 708 A.2d 237, 241 (Del. 1998); *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 342–43 (Del. 2012).

[28] *Snyder*, 708 A.2d at 241.

[29] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989).

meaning of the statutory language.[30] If the intent of the legislature is clearly reflected by the unambiguous language in the statute, then there is no need for statutory interpretation because the plain meaning of the words controls.[31] "The legislative body is presumed to have inserted every provision for some useful purpose and construction[.]"[32]

Mr. Young argues that the language of 11 *Del. C.* § 4321(d) is unambiguous in that it does not authorize administrative searches of anything beyond a probationer's person because (1) the terms "home" or "vehicle" are not expressly included, but only "individual" is, and (2) the exclusion of "home" and "vehicle" is important because these terms or their equivalents are included in other statutory or constitutional provisions but not in Subsection 4321(d).[33] Conversely, the State argues that the language unambiguously allows searches of probationers' homes,[34] but that even if the Court finds the statute ambiguous, Subsection 4321(d) authorizes administrative searches of probationers' homes and vehicles because (1) the legislative history of HB 524 makes clear the intent behind the legislature's use of the word "individual," and (2) the statute has been judicially construed as such for

---

[30] *Ross v. State*, 990 A.2d 424, 429 (Del. 2010) (citing *Stop & Shop Cos., Inc. v. Gonzales*, 619 A.2d 896, 899 (Del. 1993) (citing *Centaur P'rs v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 927 (Del. 1990))).

[31] *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000); *Spielberg*, 558 A.2d at 293; *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007); *Am. Ins. Ass'n v. Del. Dept. of Ins.*, 2006 WL 3457623, at *3 (Del. Super. Nov. 29, 2006) ("When the statute is unambiguous, the plain language of the statute controls." (citations omitted)).

[32] *Paul v. New Castle Cnty. Bd. of Adjustment*, 1993 WL 485925, at *2 n.1 (Del. Super. Oct. 25, 1993) (citing *C & T Assocs. v. Gov't of New Castle*, 408 A.2d 27, 29 (Del. Ch. 1979)).

[33] Def.'s Mot. at 3. Although it is not explicitly referenced by Mr. Young, he appears to rely upon the doctrine of *expressio unius est exclusio alterius*, a principle of statutory construction providing that the "expression of one thing is the exclusion of another" and that "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature." *Brown v. State*, 36 A.3d 321, 325 (Del. 2012) (citations omitted).

[34] State's Resp. to Mot. at 11–12.

decades with no amendment or change to it.[35]

The Court finds that Subsection 4321(d) is ambiguous because it is reasonably susceptible of two different conclusions or interpretations. One is that "searches of individuals" includes only searches of probationers' persons, not their homes. The second is that "searches of individuals" includes searches of probationers' persons and homes. For the following reasons, both interpretations are reasonable.

## A.     The Defense's Interpretation

As to the first interpretation of Subsection 4321(d), it is a reasonable position that "searches of individuals" on its face, and giving its express words their plain meaning, includes only probationers' persons, not their homes.

An "individual" is defined as (1) "a single human being or item as distinct from a group" and (2) "a distinctive or original person."[36] It is therefore reasonable to interpret "searches of individuals" to mean searches of individual probationers but not their homes or vehicles. As Mr. Young argues, in 11 *Del. C.* § 2301, the legislature expressly stated that "[n]o person shall search any person, house, building, conveyance, place or other thing …."[37] The argument follows that had the General Assembly intended for probationary searches to include residences, vehicles, or other places in addition to probationers' persons, the General Assembly would have listed them, as it did in Section 2301.

---

[35] *Id.* at 12–13; *see generally* State's Suppl. at 2–13.
[36] *Individual*, Concise Oxford English Dictionary (12th ed. 2011). Another definition provides that an individual is "existing as an indivisible entity" and "of, relating to, or involving a single person or thing, as opposed to a group." *Individual*, Black's Law Dictionary (10th ed. 2014) (cleaned up).
[37] Def.'s Mot. at 5 (citing 11 *Del. C.* § 2301).

9

## B. The State's Interpretation

As mentioned *supra*, the General Assembly chose to list the various places and entities subject to search in Section 2301: "person, house, building, conveyance, place, or other thing."[38] Although Subsection 4321(d) does not similarly list the subjects of a potential search, it is significant that the word "person," which is used in Section 2301, does not appear in Subsection 4321(d). The Fourth Amendment to the United States Constitution and Article 1 § 6 of the Delaware Constitution also employ the term "person" (specifically, the plural form of that word) in describing the places and entities subject to search.[39] There is a plausible argument, therefore, that if the General Assembly had intended to limit Subsection 4321(d) to searches of individuals' "persons" and not their houses, buildings, conveyances, places, or things, then it would have employed the specific term "persons" rather than the broader term "individuals."

Because the Court finds that Subsection 4321(d) is susceptible of two different, yet plausible, interpretations of the meaning of "searches of individuals," the Court must now engage in statutory interpretation.[40] The Court begins with the legislative history of HB 524.[41]

---

[38] 11 *Del. C.* § 2301.

[39] U.S. CONST. amend. IV ("The right of the people to be secure in their **persons**, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis supplied)); Del. Const. art. I, § 6 ("The people shall be secure in their **persons**, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probably cause supported by oath or affirmation." (emphasis supplied)).

[40] *See Am. Ins. Ass'n*, 2006 WL 3457623, at *3 ("[I]f the statute is ambiguous, then it is the role of the judiciary to construe it in a manner that is consistent with the legislative intent." (citations omitted)).

[41] *See Noranda Aluminum Hldg. Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 978 (Del. 2021) ("If there is a legitimate ambiguity, we consult the canons of statutory construction and may consider legislative history.").

**II. THE LEGISLATIVE HISTORY DEMONSTRATES THAT THE GENERAL ASSEMBLY'S INTENT WAS TO AUTHORIZE SEARCHES OF INDIVIDUAL PROBATIONERS' HOMES AS WELL AS THEIR PERSONS.**

"[T]he fundamental rule [of statutory construction] is to ascertain and to give effect to the intent of the legislature."[42]  In doing so, the Court can, and should, look to legislative history.[43]  "Legislative history is defined . . . as the proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates."[44]

Three items of legislative history have been provided by the parties to the Court.[45]  The first is the minutes from the March 14, 1990, meeting of the House Corrections Committee regarding HB 524 (the "Committee Minutes").[46]  The second is the Corrections Committee's Report (the "Committee Report"), also dated March 14, 1990, releasing HB 524 to the full House.[47]  The third is an audio recording of the House's floor deliberation and vote on HB 524 (the "House Deliberation Audio"); both the deliberation and vote occurred on March 27, 1990.[48]

---

[42] *State v. Ford*, 1996 WL 190783, at *2 (Del. Super. Mar. 26, 1996) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control. Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).  *See also Arnold v. State*, 49 A.3d 1180, 1184 (Del. 2012) ("[T]he role of t[he Supreme] Court when construing a statute is to give effect to the policy intended by the General Assembly." (quoting *State v. Fletcher*, 974 A.2d 188, 196–97 (Del. 2009))).

[43] *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000).

[44] *Pizzadili P'rs, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *4 n.28 (Del. Super. Aug. 26, 2016) (cleaned up), *aff'd sub nom. LTR Props., LLC v. Pizzadili P'rs, LLC*, 157 A.3d 757 (Del. 2017).  The terms "floor debate" and "deliberations" are synonymous and are used interchangeably hereinafter.

[45] There is also, of course, the final written form of HB 524 and its synopsis. *See* State's Resp. to Mot. Ex. B, at 2 (Del. H.B. 524 syn., 135th Gen. Assem. (1990)).  The synopsis refers generally to "searches" and therefore sheds no light on the issue before the Court. *Id.*

[46] State's Suppl. Ex. A [hereinafter "Committee Minutes"].

[47] Def.'s Mot. Ex. A [hereinafter "Committee Report"].

[48] *See generally* State's Suppl. Ex. B, HB 524 - House Audio [hereinafter "House Deliberation Audio"]. *See also State v. O'Dell*, 2017 WL 923461, at *7 (Del. Super. Mar. 1, 2017) (using legislative debates as part of the legislative record).

Before the Court proceeds, some basic context about the life of a proposed bill in the General Assembly is necessary. A bill begins in its chamber of origin (e.g., House or Senate), but usually within a smaller committee of that chamber.[49] A committee member who votes "favorable" for a proposed bill "recommends the full Chamber pass the legislation."[50] A committee member who votes "on its merits" for a bill "recommends the Chamber take action on the legislation, but … does not take a position on what action should be taken."[51] "If a majority of the committee members sign the original backer, [then] the legislation is released from committee" to the full chamber.[52] Once there, if passed, the bill proceeds to the other chamber for approval.[53] If the bill passes the second chamber, it makes its way to the Governor's desk to be signed into law.[54]

---

[49] A committee is described as an "appointed group of legislators who meet to consider and make recommendations concerning the disposition of legislation and conduct investigations on behalf of the House or Senate." *Glossary of Legislative Terms*, DEL. GEN. ASSEM., https://legis.delaware.gov/resources/glossaryofterms (last visited Jan. 30, 2024) [hereinafter *Legislative Glossary*].

[50] *Id.*

[51] *Id.*

[52] MARK J. CUTRONA, LEGIS. COUNCIL DIV. OF RSCH., DELAWARE LEGISLATIVE DRAFTING MANUAL 153 (Holly Vaughn Wagner ed., 4th ed. 2022). As a practical matter, how legislators vote is inconsequential for releasing it to chamber; rather, "[l]egislation could conceivably be released with a majority of the committee signing the backer and indicating an 'Unfavorable' opinion." *Id.*

[53] *Id.* at 155. A majority consists of 21 in the House and 11 in the Senate. *Id.*

[54] *Id.* at 157.

## A. The Committee Minutes[55]

Pursuant to the Committee Minutes, the Corrections Committee members sought to codify "current practices such as [probation officers'] authority to search individuals . . . ."[56] In response to Representative Houghton's concern over "the granting of additional powers" to probation officers "given their adversarial relationship with the probationers[,]" Representative Davis explained that "these are powers currently in practice."[57] Representative Davis also requested "an attorney's opinion on the scope of the officer's authority to search, making it clear that the intent is not to permit searches of their premises."[58] Ultimately, the bill was released from committee with one "favorable" vote and three "on its merit [sic]."[59]

## B. The Committee Report[60]

Delaware courts have frequently cited to committee reports as persuasive sources of legislative history,[61] and they are generally given greater weight than any other source of legislative history.[62]

---

[55] Minutes are described as the "[r]ecord of the proceedings of a committee. These must include the results of any committee votes and may include the reason for a member's dissent from a committee decision." *Legislative Glossary*, *supra* note 49. Minutes "usually contain a list of those in attendance at the meeting, the results of the committee votes taken, and comments from those present." CUTRONA, *supra* note 52, at 153.

[56] Committee Minutes at 3.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] A Committee Report is "[t]he official release of legislation from a committee signed by the members of the committee and indicating their opinions of the legislation[.]" *Legislative Glossary*, *supra* note 49.

[61] *See, e.g.*, *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1065 (Del. 1986) (using House committee report to determine legislative history); *Sternberg v. Nanticoke v. Mem'l Hosp., Inc.*, 2009 WL 3531791, at *9 n.23 (Del. Super. Sept. 18, 2009) ("Consequently, the Court cites to the committee report as have nearly all other courts who have addressed the considerable legislative history of the HCQIA."), *aff'd*, 15 A.3d 1225 (Del. 2011); *Pizzadili P'rs*, 2016 WL 4502005, at *4 n.28 (noting usefulness of committee reports); *Tilden v. Hayward*, 1990 WL 131162, at *5 (Del. Ch. Sept. 10, 1990) (using both House and Senate Committee reports for legislative history).

[62] *United States v. Gayle*, 342 F.3d 89, 94 (2d Cir. 2003), *as amended* (Jan. 7, 2004) ("The most enlightening source of legislative history is generally a committee report … which we have

Like the Committee Minutes, the Committee Report, which is also dated March 14, 1990, indicates that the purpose of HB 524 was to "codify practices currently in use," including "searches of the individual."[63] Moreover, while the Committee Minutes are not clear on this point, the Committee Report states that the Committee as a whole "agreed that the [probation] officers should have the authority to search the individual; not his or her premises."[64] Finally, while the Committee Minutes indicated that an attorney's opinion on the allowable scope of the search was being requested, the Committee Report indicated that the opinion had already been obtained: "Attorney opinion does not grant them authority to search premises."[65]

Thus, it appears that, at least at that point in time, Corrections Committee members understood that HB 524 did not authorize probation officers to conduct warrantless searches of probationers' homes. Corrections Committee members may also have understood that applicable legal authority prohibited officers from doing so.

There is one additional inconsistency between the Committee Minutes and the Committee Report: according to the Committee Report, the vote releasing HB 524 to the full chamber was one favorable and four on its merit, not one favorable and three on its merit.[66]

---

identified as among 'the most authoritative and reliable materials of legislative history.'" (citation omitted)).

[63] Committee Report.

[64] *Id.*

[65] *Id.*

[66] *Compare id. with* Committee Minutes at 3.

## C. The House Deliberation Audio[67]

Before there is a vote by the chamber, a period of time is allowed for floor debate, which is also part of the legislative history.[68] Despite the prominent position of committee reports in legislative history, "[c]ommittee reports … do not embody the law. [The legislature] votes on the statutory words, not on different expressions packaged in committee reports."[69]

The State argues that the House Deliberation Audio "makes clear" the intent of the legislature behind HB 524 because "Rep. Houghton, likely Rep. Davis and … the House as a whole, subsequently held a different understanding of probation officers' authority to search probationers' residences in the moments leading up to the vote,"[70] whereas the Committee Report "reflects only the views of a small number of House legislators at a particular point in time [i.e., prior to the vote]."[71] The Court agrees.

It appears from the House Deliberation Audio that, by the time of the floor debate on March 27, 1990, the understanding of key committee members regarding both the scope and the purpose of HB 524 had changed.[72] In response to a question from Representative Brady about the propriety of probationer searches in relation to

---

[67] The House Deliberation Audio constituted the third and final reading of HB 524. House Deliberation Audio at 1:7–27.

[68] *O'Dell*, 2017 WL 923461, at *4–5, *7. For HB 524, there was no substantive dialogue or deliberation in the Senate that is worth noting other than the unanimous approval. *See generally* State's Suppl. Ex B., HB 524 - Senate Audio 3 [hereinafter "Senate Audio 3"]. In the State's supplemental briefing, it included the House Deliberation Audio and three Senate recordings as part of its Exhibit B. Only Senate Audio 3 provides information pertinent to the Court's analysis of the relevant legislative history. It is referenced as Senate Audio 3 to avoid any confusion when referencing State's Exhibit B.

[69] *Abourezk v. Reagan*, 785 F.2d 1043, 1054 n.11 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987).

[70] State's Suppl. at 4.

[71] *Id.* at 12.

[72] The parties have not provided any sources of legislative history explaining key committee members' apparent change in understanding between March 14, 1990, and the House's deliberations and vote on March 27, 1990.

the probationers' constitutional rights, Representative Davis responded:

> Currently, they already are . . . conducting searches and there is case law which has upheld the right of probation and parole officers to conduct searches. This is simply putting into the Code . . . something that is already being done under . . . rules and regulations . . . .[73]

Later in the deliberations, Representative Houghton explained the following regarding probation officers' then-current practices:

> [I]f [probationers] don't show up or they violate their probation in any way, there is such a thing as a warrant that [probation officers] can sign right there for the violation of probation, go to the house, get the person, and take 'em from the house . . . The Court has given them the power to do that. So they actually can sign their own warrant, pick the person up, search him **or the premises** while they're there, bring the person in to Court for a hearing on a violation of probation.[74]

In response to a question from Representative Brady about whether this conduct by probation officers was "sanctioned by Code," Representative Houghton responded, "[T]hat's why it's being put in the Code . . . [I]t's being done now, and the Court has condoned it and given them the power to do this."[75]

Thus, it is evident from the Deliberation Audio that Committee members Houghton and Davis, at the time of the deliberations, (1) no longer believed that a warrantless search of a probationer's home by a probation officer was objectionable *per se* on constitutional or other legal grounds, and (2) no longer believed that allowing such a search was against legal advice.

In addition, the understanding expressed by Representatives Houghton and Davis during the deliberations that HB 524 would codify then-existing probation practices concerning searches of probationers, which included warrantless searches

---

[73] House Deliberation Audio at 6:48–7:27.

[74] *Id.* at 9:15–10:15 (emphasis supplied).

[75] *Id.* at 10:18–39.

of probationers' homes as well as their persons, and their communication of that understanding to the full House, is crucial in discerning legislative intent: when "seeking the legislative intent, [the Court] give[s] due weight to the practices and policies existing at the time [the statute] was enacted[.]"[76] Finally, it is significant that, during the deliberations, no member of the House expressed an opinion or belief that the practice of searching probationers' homes was unconstitutional, nor is there any evidence that legal advice to that effect was ever provided to the full chamber.[77]

Following the House floor deliberation, the members present voted unanimously for approval of HB 524.[78] Subsequently, on September 25, 1990, HB 524 was unanimously approved by the Senate.[79]

Thus, the legislative history surrounding HB 524 clarifies any ambiguity surrounding the phrase "searches of individuals" and demonstrates that the General Assembly intended to authorize probation officers to conduct warrantless searches of individual probationers' homes as well as their persons.

## III. *STARE DECISIS* ALSO SUPPORTS A FINDING THAT SUBSECTION 4321(d) AUTHORIZES SEARCHES OF PROBATIONERS' HOMES.

In addition to the clear legislative history discussed *supra*, the principle of *stare decisis* also supports confirmation of the interpretation of Subsection 4321(d) that the Delaware Supreme Court and other Delaware courts have followed for decades, i.e., that the statute authorizes warrantless searches of probationers' homes

---

[76] *Council 81, Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. State, Dep't of Fin.*, 293 A.2d 567, 571 (Del. 1972).

[77] *See generally* House Deliberation Audio. In the Court's view, mere inquiry about the constitutionality of HB 524 is distinguishable from expressing an opinion that it is unconstitutional.

[78] The final vote was 39 "yes" and 2 "absent." *Id.* at 17:3–8. Notably, Representative Houghton voted to approve HB 524 after he received clarity about courts' having approved of searches of probationers in accordance with then-existing DOC practices. *Id.* at 12:35–13:56; *id.* at 16:3–6.

[79] Senate Audio 3 at 3:2–9. This vote constituted the Senate's final reading of HB 524. *Id.* at 0:42–5.

in addition to their persons.[80]

Mr. Young argues that (1) the Supreme Court has never directly addressed the specific question raised regarding the meaning of Subsection 4321(d), and (2) the reenactment canon of judicial interpretation is not at play because that applies only to affirmative acts by the legislature, not inaction.[81] The Court is not persuaded by either argument.

The 2015 Delaware Supreme Court decision in *State v. Barnes*[82] is instructive and, in the Court's view, controlling. In *Barnes*, the issue was whether provisions of the Truth in Sentencing Act of 1989 (the "TIS Act"), which abolished parole for Titles 11 and 16 of the Delaware Code, applied to felony DUI offenses under 21 *Del. C.* § 4177.[83] There, it was the State that attempted to overturn decades-long precedent.[84] Specifically, the State argued that, because the TIS Act applied to "all crimes" committed after a certain date, and because under the TIS Act "[n]o sentence to Level V incarceration imposed pursuant to this Section is subject to parole,"[85] felony DUI offenses, along with other felonies, were not subject to parole, despite the fact that both the Superior Court and the Board of Parole had for many years operated under the assumption that the provisions of the TIS Act statute eliminating parole did not apply to felony DUI offenses.[86]

---

[80] *See, e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21, 32 (2005) ("Considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades."); *Council 81*, 293 A.2d at 571 (" A long-standing, practical, and plausible administrative interpretation of a statute of doubtful meaning will be accepted by this Court as indicative of legislative intent." (citation omitted)).

[81] Def.'s Suppl. at 5.

[82] 116 A.3d 883 (Del. 2015).

[83] *Id.* at 884.

[84] *Id.* at 892.

[85] *Id.* at 885 (alteration in original).

[86] *Id.* at 888 & n.25.

The Supreme Court disagreed and found for the defendant.[87]  As the Court explained,

> When a statute has been applied by courts and state agencies in a consistent way for a period of years, that is strong evidence in favor of that interpretation.  Under the doctrine of *stare decisis*, we must take seriously the longstanding interpretation of a statute held by our Superior Court, especially when it has been relied upon by the key actors in our criminal justice system.  The doctrine of *stare decisis* exists to protect the settled expectations of citizens because, [sic] elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.  The same principles also explain the weight given to long-standing administrative interpretations that have been relied upon by the public.[88]

Here, Mr. Young's arguments cannot overcome the reasoning of the *Barnes* Court.  As the Supreme Court explained, a "fundamental canon of statutory construction states that '[t]he longtime failure of [the legislature] to alter [a statute] after it had been judicially construed … is persuasive of legislative recognition that the judicial construction is the correct one.'"[89]  The Court so held despite its acknowledgment that "[i]f one were interpreting the Code in 1995, shortly after the adoption of felony DUIs, this Court might take the position that the better reading of the statute is the one that the State now advances."[90]

Similarly, here, the Supreme Court has judicially construed Subsection 4321(d) to authorize searches of probationers' homes for an even longer period of time than the Superior Court had construed the TIS Act in the manner being challenged by the State in *Barnes*.[91]  Moreover, there has been no amendment or

---

[87] *Id.* at 893.

[88] *Id.* at 890–91 (cleaned up).

[89] *Id.* at 892 (alterations in original) (quoting *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 488 (1940)). *See also Council 81*, 293 A.2d at 571.

[90] *Barnes*, 116 A.3d at 888.

[91] *Compare supra* notes 21, 22 *with Barnes*, 116 A.3d at 889 & n.30.

material change to Subsection 4321(d) since its enactment in 1990.[92]  Just as in *Barnes*, an advocate is now asking, "after years of acquiescence," to "deem this settled interpretation implausible under the plain language of the statute[.]"[93]  As the *Barnes* Court explained, however, in a situation in which "the prior judicial interpretation was subject to being overturned by the operation of the legislative process and was not overturned, the justification for departing from *stare decisis* is even more tenuous."[94]

Mr. Young argues, however, that the principle of implicit legislative acquiescence to a settled interpretation of a statute applies only where the legislature acts to modify the statute during the period of settled interpretation but elects not to clarify the interpretation.[95]  In support of this argument, Mr. Young points out that one of the cases cited by the *Barnes* Court, *Apex Hosiery Co. v. Leader*,[96] involved subsequent enactments by Congress implicitly recognizing the disputed judicial construction.[97]  The *Barnes* Court, however, did not limit its reliance upon the principle of legislative acquiescence to those situations in which there have been subsequent re-enactments or modifications of the statute.  Moreover, in other cases cited by the *Barnes* Court along with *Apex*, there was no indication that the legislature had modified the statute in question during the period of settled interpretation.[98]  Indeed, in those cases it was apparently the **absence of any action**

---

[92] *See, e.g.*, *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) ("[W]e must bear in mind that considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation."); *Harvey v. City of Newark*, 2010 WL 4240625, at *6 (Del. Ch. Oct. 20, 2010) ("[I]t would seem rare indeed to discover that a practical construction that had been relied upon for many years was based on an entirely implausible reading of the text at issue.").

[93] *Barnes*, 116 A.3d at 892.

[94] *Id.* (quoting *Harvey*, 2010 WL 4240625, at *7).

[95] Def.'s Suppl. at 5–7.

[96] 310 U.S. 469 (1940).

[97] Def.'s Suppl. at 6 (citing *Apex*, 310 U.S. at 488).

[98] *See Barnes*, 116 A.3d at 892 n.44 (citing *IBP*, 546 U.S. at 32 (in holding that *stare decisis* is a

by the legislature to correct an allegedly erroneous interpretation, not an intervening re-enactment or modification of the statute without clarifying the interpretation, that was the key element in a finding of *stare decisis*.

In addition, it is significant that while Subsection 4321(d) has not been amended or otherwise modified by the General Assembly since its enactment in 1990, other portions of 11 *Del. C.* § 4321 have been amended during that time period.[99] Therefore, while the General Assembly has been provided the opportunity to consider modifications to Subsection 4321(d) as it has considered, and enacted, other changes to Section 4321 as a whole, it has chosen not to do so, thus indicating its acquiescence in the long-standing judicial and administrative interpretation of the provision.

Finally, as a practical consideration, the principles of *stare decisis* underlying this case are even stronger than in *Barnes* because, here, the Supreme Court itself has impliedly, and consistently, interpreted Subsection 4321(d) to authorize searches of probationers' persons and homes.[100] Moreover, in *Barnes*, the Supreme Court

---

compelling consideration with regard to statutory construction, the Court gave no indication that there had been a re-enactment or modification of the statute during the period of interpretation in question); *Ill. Brick*, 431 U.S. at 736 (in finding that principles of *stare decisis* weighed heavily in guiding the Court in its statutory interpretation, the Court observed that Congress "is free to change this Court's interpretation of its legislation[,]" without indicating that Congress had previously re-enacted or amended the statute in question); *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 202 (1991) (noting that Congress had had thirty years to correct the Court's interpretation of a statute in a previous case but had chosen not to do so)).

[99] In 1999, the General Assembly created Subsection 4321(e). Del. S.B. 121, 140th Gen. Assem., 72 Del. Laws ch. 108, § 1 (1999). In 2001, the General Assembly amended Subsection 4321(a). Del. H.B. 133, 141st Gen. Assem., 73 Del. Laws ch. 60, § 1 (2001). In 2010, the General Assembly added Subsection 4321(f). Del. H.B. 452, 145th Gen. Assem., 77 Del. Laws ch. 443, § 1 (2010). In 2012, the General Assembly amended Subsection 4321(b)(2) and created Subsection 4321(g). Del. S.B. 226, 146th Gen. Assem., 78 Del. Laws ch. 392, §§ 2–3 (2012). In 2014, the General Assembly amended Subsection 4321(f). Del. H.B. 226, 147th Gen. Assem., 79 Del. Laws ch. 283, § 1 (2014). In 2021, the General Assembly created Subsection 4321(h). Del. H.B. 195, 151st Gen. Assem., 83 Del. Laws ch. 83, § 1 (2021). Most recently, in 2023, the General Assembly amended Subsection 4321(h). Del. H.B. 206, 152d Gen. Assem., 84 Del. Laws ch. 149, § 6 (2023).

[100] *See supra* note 22 (collecting cases).

gave "great weight" to the longstanding interpretation by both this Court and the Board of Parole of the relevant statute,[101] reasoning that the long-standing interpretation of the statute maintained by those bodies, "both composed of sophisticated, repeat players in our criminal justice system, who grapple with the Code on a daily basis," was an important consideration in interpreting the statute.[102] Similarly, the DOC, likewise a repeat player in the criminal justice system, is entrusted to administer Procedure 7.19, and does so pursuant to an interpretation of Subsection 4321(d) approved by our Supreme Court itself.[103] For these reasons, the Court sees no reason to depart from this well-settled interpretation.[104]

## CONCLUSION

In sum, the Court finds that the phrase "searches of individuals" contained in 11 *Del. C.* § 4321(d) is ambiguous because it is susceptible of two plausible interpretations. The legislative history of House Bill 524, however, demonstrates that the General Assembly intended for "searches of individuals" to include the then-current practice, which authorized probation officers to search probationers' homes as well as their persons. That finding, coupled with the principles of *stare decisis* reflected in a settled interpretation of Subsection 4321(d) followed for decades by the Supreme Court and by the DOC, dictates the just and appropriate result on the

---

[101] *Barnes*, 116 A.3d at 884.

[102] *Id.* at 889.

[103] *See, e.g.*, *Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer[.]" (citations omitted)); *State ex rel. Zebley v. Mayor & Council of Wilm.*, 163 A.2d 258, 264 (Del. 1960) ("[W]here a statute is doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of legislative intent." (citations omitted)). *See also supra* note 22 (collecting cases).

[104] *Barnes*, 116 A.2d at 891 ("The doctrine of stare decisis exists to protect the settled expectations of citizens because '[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.'" (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994))).

22

question before the Court.

**WHEREFORE**, for the foregoing reasons, Defendant Devon Young's Motion to Suppress is **DENIED**.

Based on the Court's prior ruling and the agreement of the parties, this denial is without prejudice for Mr. Young to file a second motion to suppress based upon the facts of the search itself.[105]   Any such motion must be filed no later than **February 14, 2024.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls
*Via Email*
oc:  Prothonotary
cc:  Counsel of Record

---

[105] Hr'g Tr. at 3.

23